STATE of Iowa, Appellee,

v.

**Andrew Morgan AHITOW, Appellant.**

No. 95–464.

Supreme Court of Iowa.

Feb. 14, 1996.

Catherine E. Johnson, Iowa City, and Chad Thomas, Legal Intern, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, J. Patrick White, County Attorney, and Timothy J. Fox, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and CARTER, NEUMAN, SNELL, and TERNUS, JJ.

TERNUS, Justice.

In response to questioning by a police officer, appellant, Andrew Ahitow, gave a false account of his whereabouts during the time some newspaper vending machines had been knocked over. On the basis of this response, he was charged with and convicted of violating Iowa Code section 718.6 (1993), prohibiting false reports to law enforcement authorities. Ahitow challenges his conviction, claiming the statute does not encompass his conduct. We agree and therefore, reverse.

I. *Background Facts and Proceedings.*

The facts are not in dispute. Shortly before 5:00 a.m. on November 19, 1994, Ahitow and two friends were walking around Iowa City. One of Ahitow's friends knocked over some newspaper stands located in front of a store.

Meanwhile, across the street from the store, two Iowa City police officers were standing in a police parking lot when they heard a loud noise from the direction of the store. The officers saw three individuals running from the scene. One of the officers yelled for the fleeing persons to stop. One of Ahitow's friends did; Ahitow and the third individual did not.

About twenty-five minutes later, Ahitow was stopped by a police officer who asked him where he had been. Ahitow falsely told the officer that he had been in a residence hall visiting a friend named Katie. Ahitow could not recall her last name, room number or telephone number. He later admitted, after receiving Miranda warnings, that he had been present when his friend knocked over the newspaper vending machines.

The State charged Ahitow with two violations: (1) false reports to a law enforcement authority, Iowa Code section 718.6, based on Ahitow's statements concerning his whereabouts, and (2) interference with official acts, Iowa Code section 719.1, for running away when the first officer requested that he stop. A magistrate found Ahitow guilty of both charges. Ahitow appealed his conviction under section 718.6 and this conviction was

affirmed by a district associate judge. We granted discretionary review.

## II. *Scope of Review.*

The issue in this case involves the interpretation of Iowa Code section 718.6 (1993). We review issues of statutory construction for correction of errors of law. Iowa R.App.P. 4; *Jamieson v. Harrison*, 532 N.W.2d 779, 780 (Iowa 1995).

## III. *Statutory Interpretation.*

Ahitow was convicted of violating Iowa Code section 718.6 (1993):

> **718.6 False reports to law enforcement authorities.**
>
> A person who reports or causes to be reported false information to a fire department or a law enforcement authority, knowing that the information is false, or who reports the alleged occurrence of a criminal act knowing the same did not occur, commits a simple misdemeanor.

Ahitow claims that responding to the officer's question with a false alibi does not fall within this statute. He asserts that the word "report" is ambiguous and implies a requirement of affirmative conduct.

 A. *Ambiguity of statute.* "Words are ambiguous if reasonable persons can disagree as to their meaning." *American Asbestos Training Ctr., Ltd. v. Eastern Iowa Community College*, 463 N.W.2d 56, 58 (Iowa 1990); *accord State v. Green*, 470 N.W.2d 15, 18 (Iowa 1991). Absent legislative definition or a particular and appropriate meaning in law, we give words their plain and ordinary meaning. *State v. Romeo*, 542 N.W.2d 543, 548 (Iowa 1996); Iowa Code § 4.1(38) (1993). We also consider the context within which they are used. Iowa Code § 4.1(38). *American Asbestos*, 463 N.W.2d at 58; *see also* Richard A. Posner, *The Problems of Jurisprudence* 269 (1990) ("[m]eaning depends upon the context as well as on the semantic and other formal properties of sentences").

 Here the verb "report" is not defined by the legislature. Therefore, it is appropriate to examine the dictionary definition of this term. *Romeo*, 542 N.W.2d at 548. The dictionary defines the verb "report" as "to give an account of: narrate, relate, tell." Webster's Third New Int'l Dictionary 1925 (1993). One could argue that Ahitow's response to the officer's question falls within this broad definition: Ahitow *told* the officer where he had been.

However, the dictionary also defines the verb "report" as "to make known to the proper authorities." *Id.* The word "make" means "to cause to be or become: put in a certain state or condition." *Id.* at 1363. Thus, the word "report" may also have a more narrow definition: *causing* the authorities to know the information reported. This definition envisions some affirmative action by the person providing the information in initiating the communication.

Because persons might reasonably disagree on whether the verb "report" encompasses the mere telling of information or has a more narrow meaning, the word is ambiguous. Therefore, we turn to rules of statutory interpretation.

B. *Interpretation of the statute.* In determining the intention of the legislature when it uses an ambiguous term, we consider former and more recent versions of the statute. *See* Iowa Code § 4.6(4) (1993) (if a statute is ambiguous, court may consider former statutory provisions); *State ex rel. Lankford v. Allbee*, 544 N.W.2d 639, 641 (Iowa 1996) (examining statutory amendments to ascertain meaning of original statute). "Using legislative history to help interpret unclear statutory language seems natural. Legislative history helps a court understand the context and purpose of a statute." Stephen Breyer, *On the Uses of Legislative History in Interpreting Statutes*, 65 Cal.L.Rev. 845, 848 (1992).

The precursors to section 718.6 began as statutes punishing individuals for making false reports of fires. *E.g.,* Iowa Code § 2468 (1897); Iowa Code § 1768 (1860). The 1860 Code provided "[t]hat it shall not be lawful for any person or persons to *cause* false alarm of fire, either by setting fire to any combustible material or by giving an alarm of fire without cause . . . ." Iowa Code § 1768 (1860) (emphasis added). Thus, the

earliest version of this statute seems to envision the false reporting of a fire in the narrow sense of reporting.[1]

Of equal importance to our analysis is an amendment to the statute which was enacted after Ahitow's conviction. This 1995 amendment made minor alterations to the 1993 version of section 718.6 and also added two new subsections:

**718.6 False reports to or communications with public safety entities.**

1. A person who reports or causes to be reported false information to a fire department, a law enforcement authority, or other public safety entity, knowing that the information is false, or who reports the alleged occurrence of a criminal act knowing the act did not occur, commits a simple misdemeanor, unless the alleged criminal act reported is a serious or aggravated misdemeanor or felony, in which case the person commits a serious misdemeanor.

2. A person who telephones an emergency 911 communications center knowing that the person is not reporting an emergency or otherwise needing emergency information or assistance commits a simple misdemeanor.

3. A person who knowingly provides false information to a law enforcement officer who enters the information on a citation commits a simple misdemeanor, unless the criminal act for which the citation is issued is a serious or aggravated misdemeanor or felony, in which case the person commits a serious misdemeanor.

Iowa Code § 718.6 (1995 Supp.); *see* 1995 Iowa Acts ch. 89, § 1.

■ Ahitow asserts the recent amendment demonstrates his conduct was not intended to be within the 1993 statute because the third subsection uses the term "provides" instead of "reports." Thus, he argues, the legislature must have contemplated a difference between the two words. "Reporting," therefore, requires more than merely providing information; it anticipates affirmative steps to communicate. We agree with Ahitow's argument.

■ Statutory amendments may either clarify or modify existing legislation. We construe revisions to a statute as altering that statute if the intent to change the law is clear and unmistakable. *State v. Osborn,* 368 N.W.2d 68, 69–70 (Iowa 1985). Moreover, any material change in the language of a statute is presumed to alter the law. *State ex rel. Palmer v. Board of Supervisors,* 365 N.W.2d 35, 37 (Iowa 1985). The legislature's intent to expand the scope of the statute is clear here because if we were to read "reports" according to the dictionary definition of "giving an account," the new subsections would be unnecessary as the conduct they prohibit would be covered in the first, original subsection. We do not interpret statutes in a way that makes portions of them irrelevant or redundant. *Auto Dealers Ass'n v. Iowa Dep't of Revenue,* 301 N.W.2d 760, 765 (Iowa 1981); *see also Slockett v. Iowa Valley Community Sch. Dist.,* 359 N.W.2d 446, 448 (Iowa 1984) (legislature presumed not to perform useless acts).

Therefore, we conclude the recent amendment to section 718.6 broadened the scope of the statute to include conduct not previously encompassed within that statute. Although new section 718.6(3) punishes a person who knowingly "provides" false information under certain circumstances, the 1993 version of section 718.6 under which Ahitow was charged did not; it only punished a person who "reported" false information, i.e., a person who initiated the communication of false information. *Cf. People v. Vasallo–Hernandez,* —— P.2d ——, —— [1995 WL 626239] (Colo.Ct.App.1995) (reporting false information requires "initiation of affirmative action intended to communicate information").

■ A narrow interpretation of section 718.6 is also dictated by the rule of statutory interpretation that criminal statutes must be narrowly construed. *See State v. Ridout,* 346

---

1. This statute had several versions between 1860 and 1978 when it appeared in its present form. *See, e.g.,* Iowa Code § 13110 (1924); Iowa Code § 714.31 (1946); Iowa Code § 714.42 (1971); Iowa Code § 718.6 (1978). We do not review the evolution of section 718.6 to its current form because we do not find the legislative history between 1860 and 1978 enlightening on the issue presented here.

N.W.2d 837, 840 (Iowa 1984). A narrow construction of section 718.6 limits the 1993 statute to persons who take affirmative steps to convey false information to law enforcement authorities.

### IV. *Disposition.*

Under our interpretation of section 718.6, Ahitow did not *report* false information to the officer; he merely *provided* false information to the officer upon the officer's questioning. We certainly do not approve of Ahitow's fabrication of an alibi. However, we conclude his conduct is not punishable under Iowa Code section 718.6 (1993). Therefore, we reverse his conviction under this statute.

**REVERSED.**