STATE of Iowa, Appellee,

v.

Jesus GUZMAN–JUAREZ, Appellant.

No. 98–535.

Supreme Court of Iowa.

March 24, 1999.

Linda Del Gallo, State Appellate Defender, and Shellie L. Knipfer, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Julie H. Brown, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Anthony H. Janney, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, SNELL, TERNUS, and CADY, JJ.

TERNUS, Justice.

The defendant, Jesus Guzman–Juarez, pleaded guilty to first-offense operating while intoxicated. *See* Iowa Code § 321J.2(1)(b)

(1997). At his sentencing hearing, he requested a deferred judgment. The district court concluded that the defendant was not eligible for a deferred judgment because his intoxilyzer test had shown an alcohol concentration of .154, and Iowa law prohibited the court from granting a deferred judgment to a defendant testing above .15. *See* Iowa Code § 321J.2(3)(a)(1) (Supp.1997). The court sentenced the defendant to a two-day jail term, imposed a fine plus surcharge, ordered a substance abuse evaluation, and ordered the completion of a drinking drivers course. The defendant appeals. We affirm.

## I. *Issue on Appeal.*

■ The defendant claims that the trial court should have considered the margin of error stated in the intoxilyzer certification in determining his alcohol concentration. When the intoxilyzer's margin of error is subtracted from the test results of .154, the defendant's alcohol concentration does not exceed .15, thereby making him eligible for a deferred judgment.[1] The district court held that section 321J.2(3)(a)(1) did not provide for test results to be reduced by the testing instrument's margin of error, and therefore, the defendant's test results of .154 rendered him ineligible for the desired disposition. We review the court's interpretation of section 321J.2(3)(a)(1) for correction of errors of law. *See State v. Francois*, 577 N.W.2d 417, 417 (Iowa 1998).

## II. *Interpretation of Section 321J.2(3)(a)(1).*

■ Prior to the defendant's arrest and sentencing, the legislature enacted a law that prohibited deferred judgments for certain defendants. *See* 1997 Iowa Acts ch. 177, § 4 (codified at Iowa Code § 321J.2(3)(a)(1) (Supp.1997)). This statute states in pertinent part:

[T]he court shall not defer judgment or sentencing ... if any of the following apply:

(1) If the defendant's alcohol concentration established by the results of an analy-

sis of a specimen of the defendant's blood, breath, or urine withdrawn in accordance with this chapter exceeds .15.

Iowa Code § 321J.2(3)(a)(1) (Supp.1997). Clearly, the statute does not instruct the court to apply a margin of error in determining the alcohol concentration established by the test. The defendant argues, however, that he should be given the benefit of the doubt. In fact, at the sentencing hearing, the State did not contest the defendant's interpretation of the statute. The county attorney pointed out that the Iowa Department of Transportation (DOT) routinely reduces an individual's test results by the testing instrument's margin of error in determining whether that person has exceeded the .10 legal limit. *See* Iowa Code § 321J.2(1)(b) (1997) (making it a crime to operate a motor vehicle with an alcohol concentration of .10 or more).

■ In construing statutes, we search for the legislature's intent as evidenced by what the legislature said, rather than what it might have said. *See Krull v. Thermogas Co.*, 522 N.W.2d 607, 612 (Iowa 1994). In addition, "[w]hen the text of a statute is plain and its meaning clear, the court should not search for a meaning beyond the express terms of the statute." *Henriksen v. Younglove Constr.*, 540 N.W.2d 254, 258 (Iowa 1995). Applying these rules here, we must conclude that the legislature made no provision that the test results could or should be reduced by the margin of error. The statute is absolute in its terms; it focuses on "the results of an analysis," not the results *as modified by the margin of error.* To adopt the defendant's interpretation of this statute would require us to read something into the law that is not apparent from the words chosen by the legislature. This we cannot do. *See Kelly v. Brewer*, 239 N.W.2d 109, 115 (Iowa 1976) (holding the court "may not add its own unwarranted words of qualification" to a statute).

■ The defendant places great reliance on an amendment to section 321J.2(3)(a)(1)

---

1. The intoxilyzer certification established a margin of error of ±.004 or 5%, whichever is greater. Applying either figure to the defendant's alcohol concentration of .154 results in a number that does not exceed .15.

that was enacted shortly after he filed his notice of appeal in this case. During the 1998 legislative session, the General Assembly amended section 321J.2(3)(a)(1) to expressly state that the margin of error was *not* to be subtracted from the test results when considering a defendant's eligibility for a deferred judgment. See 1998 Iowa Acts ch. 1138, § 3.[2] The defendant now asserts that this amendment is a *change* in the law and, thus, is evidence that at the time of his sentencing, the applicable law allowed for the requested correction for the margin of error. On appeal, the State argues that the amendment merely clarified the legislature's intent when it enacted the original statute in 1997.

Initially, we question the propriety of even considering the subsequent history of this law when the statute as originally enacted is not ambiguous. *See* Iowa Code § 4.6(4) (stating that "[i]f a statute is *ambiguous*," the court may consider former statutory provisions (emphasis added)); *State v. Ahitow*, 544 N.W.2d 270, 272 (Iowa 1996) (stating that former and more recent versions of a statute may be considered in "determining the intention of the legislature when it uses an *ambiguous* term" (emphasis added)); *Henriksen*, 540 N.W.2d at 258 (stating that when meaning of statute is clear, court should not resort to rules of construction). Certainly, any subsequent legislation would be ineffective to retroactively change the law governing an adjudicated case. *See State ex rel. Lankford v. Mundie*, 508 N.W.2d 462, 463 (Iowa 1993). Notwithstanding the questionable necessity of considering the subsequent statutory history, we have factored it into our analysis and conclude the result is the same.

An amendment to a statute does not necessarily indicate a change in the law. Statutory amendments may either clarify or modify existing legislation. We construe revisions to a statute as altering that statute if the intent to change the law is clear and unmistakable. Moreover, any material change in the language of a statute is presumed to alter the law.

*Ahitow*, 544 N.W.2d at 273 (citations omitted). This presumption is not conclusive, however: "the time and circumstances of the amendment . . . may indicate that the legislature merely intended to interpret the original act by clarifying and making a statute more specific." *Kroblin Refrigerated Xpress v. Iowa Ins. Guar. Ass'n*, 461 N.W.2d 175, 178 (Iowa 1990); *accord* 1A Norman J. Singer, *Sutherland Statutory Construction* § 22.30, at 268 (5th ed.1993). The New York Court of Appeals stated the following principles to assist in evaluating the effect of time and circumstances on the interpretation of an amendment:

If [the amendment] follows immediately and after controversies upon the use of doubtful phraseology therein have arisen as to the true construction of the prior law it is entitled to great weight. If it takes place after a considerable lapse of time and the intervention of other sessions of the legislature, a radical change of phraseology would indicate an intention to supply some provisions not embraced in the former statute.

*People ex rel. Westchester Fire Ins. Co. v. Davenport*, 91 N.Y. 574, 591–92 (1883) (citation omitted); *accord Barnett v. Durant Community Sch. Dist.*, 249 N.W.2d 626, 629 (Iowa 1977).

We first conclude that the amendatory language does not evidence a clear and unmistakable intent to change the law. *See State ex rel. Schuder v. Schuder*, 578 N.W.2d 685, 687 (Iowa 1998) (concluding amendment did not evidence a clear and unmistakable intent to change the law). Nor does the amendment materially change the law so as to give rise to a presumption that the legislature intended to alter the law. As we discussed above, the original statute did not provide for a reduction of the test results by any margin

---

**2.** Section 321J.2(3)(a)(1) now reads:

[T]he court shall not defer judgment or sentencing . . . if any of the following apply:

(1) If the defendant's alcohol concentration established by the results of an analysis of a specimen of the defendant's blood, breath, or urine withdrawn in accordance with this chapter exceeds .15, *regardless of whether or not the alcohol concentration indicated by the chemical test minus the established margin of error inherent in the device or method used to conduct the test equals an alcohol concentration of .15 or more.*

(Added language emphasized.)

of error. Thus, the amendment merely clarifies the legislature's original intent. Furthermore, the circumstances surrounding the amendment support this conclusion. The amendment was enacted in the legislative session immediately following the session in which the original statute was passed. This amendment came after the courts had had an opportunity to apply the law contrary to the interpretation placed on the law by the criminal defense bar, county prosecutors, and the DOT, as illustrated by the present case. Under these circumstances, we think the amendment was enacted to clarify rather than to change the existing law.

We hold the trial court did not err in considering the results of the intoxilyzer test administered to the defendant, without any reduction for the margin of error, in deciding whether the defendant qualified for a deferred judgment. Because the defendant's test results were more than .15, the trial court correctly ruled that the defendant was not eligible for a deferred judgment. Finding no error in the court's interpretation of section 321J.2(3)(a)(1), we affirm the defendant's sentence.

**AFFIRMED.**