**STATE of Iowa, Appellee,**

v.

**Everett Ray WAGNER, Appellant.**

No. 97–1795.

Supreme Court of Iowa.

July 8, 1999.

Linda Del Gallo, State Appellate Defender, and John P. Messina, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Thomas S. Tauber and Robert J. Glaser, Assistant Attorneys General, for appellee.

TERNUS, Justice.

This case presents one issue: does the State of Iowa have criminal jurisdiction to prosecute a defendant in the constructive custody of the State for an escape that occurred in Texas? Although the district court held that the State did have jurisdiction, we find no Iowa statute that would authorize the prosecution of an escape offense that took place outside Iowa's geographical borders. Therefore, we reverse and remand.

I. *Factual and Procedural Background.*

The facts are not in dispute. Prior to the commission of the crime in question,

the defendant, Everett Wagner, was an inmate at the Iowa State Penitentiary. Wagner and five other inmates were to be transported from Iowa to a prison in New Mexico pursuant to the Interstate Corrections Compact (ICC), Iowa Code chapter 913 (1995). (This statute authorizes the State to contract for the confinement of Iowa prisoners in out-of-state penal institutions.) The State hired a private business, R & S Prisoner Transport (R & S), to transfer the prisoners.

While in transit from Iowa to New Mexico, the inmates escaped from the custody of R & S. The group was traveling through Texas at the time of the escape and Texas authorities quickly captured the prisoners. Although Wagner was initially charged with escape by the State of Texas, this prosecution was dismissed for reasons not apparent in the record.

The State of Iowa then charged Wagner with escape in violation of Iowa Code section 719.4(1).[1] Wagner filed a motion to dismiss, claiming that the offense charged was not punishable under the laws of Iowa because the alleged crime occurred in Texas. This motion was overruled by District Court Judge R. David Fahey and, thereafter, a jury found Wagner guilty of escape. After finding Wagner to be an habitual offender, District Court Judge William L. Dowell sentenced Wagner to a prison term not to exceed fifteen years. Wagner appealed.

## II. Issues on Appeal and Scope of Review.

On appeal, Wagner reasserts his challenge to the district court's jurisdiction. The State attempts to sustain the district court's ruling on two grounds: (1) Iowa's criminal jurisdiction statute, Iowa Code section 803.1, authorizes Wagner's prosecution in Iowa for his Texas escape; and (2) criminal jurisdiction of this crime is

authorized by the ICC, Iowa Code chapter 913.

■■■ To the extent the resolution of this appeal turns on the interpretation of a statute, the court's review is for errors of law. See State v. Francois, 577 N.W.2d 417, 417 (Iowa 1998). Issues of the jurisdiction and authority of the district court are also legal issues reviewed on error. See Wycoff v. Iowa Dist. Ct., 580 N.W.2d 786, 787 (Iowa 1998).

## III. Territorial Jurisdiction.

■■ A. General principles of criminal jurisdiction. This case turns on whether the State of Iowa has jurisdiction to prosecute an escape that did not occur within its geographical boundaries. The term "jurisdiction" in this sense does not refer to the authority of the Iowa courts "to try an offense of a certain kind." 2 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 16.2(a), at 342 (1984) [hereinafter "LaFave"]. Nor does it refer to the power of the court to try a certain person. See id. Rather, the word jurisdiction in the context of this case refers to the power of the State of Iowa "to create criminal law, especially with respect to the permissible geographical scope of penal legislation." Id. We refer to this aspect of jurisdiction as the State's criminal or territorial jurisdiction.

■■■ . Because the State's "territorial jurisdiction is an essential element of the crime," the State bears the burden to establish jurisdiction. State v. Liggins, 524 N.W.2d 181, 184–85 (Iowa 1994). Wagner claims the State cannot meet this burden because the legislature has not enacted any criminal law that would punish an escape occurring outside its territorial borders.

Under the common law, "jurisdiction to subject an accused to criminal prosecution rest[ed] in the courts of the state in which

---

1. Section 719.4(1) provides:
   A person convicted of a felony, ... who intentionally escapes ... from the custody of any public officer or employee to whom the person has been entrusted, commits a class "D" felony.

the crime was committed." *Id.* at 184. The application of this principle is illustrated in the landmark case of *State v. Hall,* 114 N.C. 909, 19 S.E. 602 (1894). In *Hall,* the North Carolina court considered its jurisdiction of two defendants who had fired shots while standing in North Carolina, hitting the deceased in Tennessee. 19 S.E. at 602. The court held that under the common law, the State of Tennessee had jurisdiction of the murder because that is where the death giving rise to the offense occurred. *Id.* at 604. It remarked, however, that although the criminal laws of North Carolina did not apply outside the state's borders, "it is competent for the legislature to determine what acts within the limits of the state shall be deemed criminal, and to provide for their punishment." *Id.* at 606. Finding no North Carolina law that would encompass a homicide occurring in another state, the North Carolina Supreme Court reversed the defendants' convictions. *Id.* at 605.[2]

Since the *Hall* decision, many states have enacted laws to more specifically define, from the perspective of territorial jurisdiction, when an offense violates the criminal laws of that state. *See* 2 LaFave § 16.2, at 349–50. Iowa adopted such a statute, patterned in part on the Model Penal Code. *Compare* Iowa Code § 803.1, *with* Model Penal Code § 1.03 (1985). We now turn to Iowa's criminal jurisdiction statute, section 803.1, to ascertain whether it authorizes the prosecution before us.

■ B. *The criminal jurisdiction statute—section 803.1.* The portion of section 803.1 upon which the State relies makes a person subject to prosecution in Iowa if "[t]he offense is committed either wholly or partly in Iowa." Iowa Code § 803.1(1)(*a*). The statute further defines when a crime is committed partly in Iowa: "if conduct which is an element of the offense, or a result which constitutes an element of the offense, occurs within this

state." *Id.* § 803.1(2). Thus, the court must examine the facts of the present case to determine whether conduct or a result of conduct constituting an element of the crime of escape took place in Iowa.

■ The crime of escape has three elements: (1) the defendant is "[a] person convicted of a felony"; (2) who "intentionally escapes"; (3) "from the custody of any public officer or employee to whom the person has been entrusted." *Id.* § 719.4(1). The State argues that because the defendant's underlying felony occurred in Iowa, the first element of the escape offense took place here. But the first element of the crime of escape does not require proof that the defendant committed a felony; it merely requires proof that the defendant is a felon. In other words, the first element does not describe "conduct," as contemplated by section 803.1(2); rather, it describes a status. *Compare Webster's Third New Int'l Dictionary* 474 (unabr. ed.1993) (defining "conduct" as "*behavior* in a particular situation or relation or on a specified occasion" (emphasis added)), *with id.* at 2230 (defining "status" as "the *condition* (as arising out of . . . crime . . . ) of a person that determines the nature of his legal personality, his legal capacities, and the nature of the legal relations to the state" (emphasis added)).

■ The State argues alternatively that Wagner's placement in the custody of Iowa authorities occurred in Iowa. But Wagner's placement in custody is not an element of the offense. Similar to Wagner's status as a felon, Wagner's placement in custody is merely a condition that must exist in order for Wagner to escape from custody. In other words, the conduct that constitutes an element of the crime is the defendant's escape from custody, not the defendant's *placement* in custody.

2. The application of the common law rule of territorial jurisdiction yields a similar result here. Because Wagner's escape was committed in Texas, the courts of Texas, not Iowa, have criminal jurisdiction of this offense under the relevant common law principle.

■ Finally, the State argues that as a general principle the State should be able to protect its interest in punishing defendants who escape from its custody. In considering this argument, it is important to note that the General Assembly did *not* adopt the following portion of the Model Penal Code that would allow prosecution of a crime in this state where

> the offense is based on a statute of this State that expressly prohibits conduct outside the State, when the conduct bears a reasonable relation to a legitimate interest of this State and the actor knows or should know that the conduct is likely to affect that interest.

Model Penal Code § 1.03(1)(f). The State would have the court read into section 803.1 a broader variation of this provision from the Model Penal Code. But principles of statutory construction prevent us from reading into the statute something the legislature has not included. *See State v. Guzman–Juarez,* 591 N.W.2d 1, 2 (Iowa 1999) (refusing "to read something into the law that is not apparent from the words chosen by the legislature"); *Henriksen v. Younglove Constr.,* 540 N.W.2d 254, 258 (Iowa 1995) ("When the text of a statute is plain and its meaning clear, the court should not search for a meaning beyond the *express* terms of the statute...." (Emphasis added.)). Thus, the focus of any application of section 803.1(1)(*a*) is on where the conduct or a result of the conduct constituting an element of the offense took place, *not* on whether the State of Iowa has a legitimate interest in that conduct or its consequences.

In summary, we conclude neither conduct nor a result of conduct constituting an element of the crime of escape occurred in Iowa. Therefore, the offense allegedly committed by Wagner does not fall within the scope of section 803.1. Consequently, the State must look beyond the statutory principles of territorial jurisdiction to sustain the present prosecution.

■ C. *The Interstate Corrections Compact—chapter 913.* As previously not-

ed, Wagner was being transported from Iowa to New Mexico pursuant to the Interstate Corrections Compact when he and the other inmates escaped in Texas. The State contends that

> it is the intention of the [ICC] to extend the jurisdiction of the party states beyond the respective boundaries of those states, for the purpose of prosecuting escapes committed by inmates transferred from one state to another pursuant to the [ICC].

■ Our consideration of the State's proposed interpretation of the ICC is guided by well-established principles of statutory construction. The goal in interpreting statutes is to ascertain legislative intent, not to decide what this court thinks the law should be. *See Guzman–Juarez,* 591 N.W.2d at 2 (holding that the court construes statutes by searching for the legislature's intent). We must glean the legislature's intent from what the legislature said, not what it might or should have said. *See* Iowa R.App. P. 14(f)(13). With these principles to guide us, we now examine the State's claim that the legislature intended to punish out-of-state escapes of Iowa prisoners under Iowa law.

The first provision of the ICC upon which the State relies provides that an escaped inmate "shall be deemed a fugitive from the sending state" as well as from the receiving state. Iowa Code § 913.2, art. V, para. 2. Whether an inmate is a fugitive from Iowa is a different question, however, from whether the inmate committed a crime that may be prosecuted in Iowa. Clearly, the quoted portion of the ICC does not expressly provide that Iowa retains jurisdiction to prosecute prisoners who escape from custody while outside the geographical boundaries of Iowa. We can surmise that the legislature knew how to make its wishes known on this subject because in its earlier adoption of the agreement on detainers compact, Iowa Code chapter 821, the General Assembly included a specific provision making "[e]s-

cape from custody while in another state, pursuant to this agreement on detainers" an offense against the laws of Iowa to the same extent as if the escape had been from an Iowa institution. *Id.* § 821.5. We think if the legislature had meant to include the same concept in the ICC, it would have done so more explicitly than merely stating that an escaped inmate is a fugitive from the sending state. As already noted, fugitive status and criminal jurisdiction are two different matters.

■ The State also argues that jurisdiction can be implied from the following provision of the ICC:

> Inmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state and may at any time be removed therefrom for transfer to a prison or other institution within the sending state, for transfer to another institution in which the sending state may have a contractual or other right to confine inmates, for release on probation or parole, for discharge, or for any other purpose permitted by the laws of the sending state....

*Id.* § 913.2, art. IV, para. 3. When considered in context, it is clear that the term "jurisdiction" as used in the statute is meant to simply confer authority upon the sending state to determine the future transfer, removal, parole, or other disposition of the inmate. In this sense, jurisdiction refers to the State's power over a certain *person*. As we discussed earlier, however, criminal jurisdiction refers to the State's power to create criminal laws, including the geographical scope of such laws. There is nothing in the context of the quoted provision of the ICC that implies any reference to criminal or territorial jurisdiction.

■ We conclude that the State's proposed interpretation of the ICC would violate our well-established principles of statutory construction. The legislature, in adopting the ICC, did not make it a crime against the laws of Iowa for a prisoner to escape Iowa's legal custody while in another state. Consequently, in order to find territorial jurisdiction here this court would have to give the ICC a meaning based on what the State thinks the legislature *should* have said. This conclusion is evidenced by the State's reliance in its brief on policy reasons to support the State's position: "It would be logical, and in the interest of justice, to place jurisdiction with the state which has the strongest interest in seeing justice done." Notwithstanding the logic of the State's position, it is within the province of the legislature, in enacting laws, to balance the State's interests and the public policies implicated by proposed legislation.[3] Once the legislature has spoken, the court's role is to give effect to the law as written, not to rewrite the law in accordance with the court's view of the preferred public policy. *See* 1 Norman J. Singer, *Sutherland Statutory Construction* § 2.01, at 15 (5th ed. rev.vol. 1994) ("A court is not empowered to substitute its judgment for that of the legislature on matters of policy...."). Therefore, it would be inappropriate for this court to rely on the State's notion of the best public policy to rationalize an inference that the legislature surely intended to expand the State's territorial jurisdiction.

### IV. *Summary.*

Neither the common law nor Iowa's criminal jurisdiction statute supports the prosecution of the defendant's Texas escape in Iowa. Although the ICC gives Iowa

---

**3.** Although Iowa has an interest in maintaining custody of its inmates, the legislature may well have thought that the state in which an escape occurs would also have a keen interest in prosecuting Iowa inmates who escape while physically in another state. It is the citizens of that state, not Iowa residents, who are at risk and suffer the consequences of any additional crimes committed by the escapees. Thus, other states would arguably have a great interest in discouraging escapes within their boundaries, including escapes of out-of-state prisoners.

continuing jurisdiction over the defendant, regardless of his physical location, the ICC does not make it a crime against the laws of Iowa to escape from custody in another state. There is no Iowa statute making legal custody of the defendant or a significant interest in the offense sufficient to support Iowa's criminal jurisdiction of this crime. We refuse to read this proposition into section 803.1 or chapter 913, as to do so would be contrary to our long-established principles of statutory construction, as well as fundamental notions of separation of powers.

We reverse and remand to the district court with directions to dismiss the escape charge against Wagner.

**REVERSED AND REMANDED WITH DIRECTIONS.**

All justices concur except HARRIS, J., and McGIVERIN, C.J., and CARTER and LARSON, JJ., who dissent.

HARRIS, Justice (dissenting).

I respectfully dissent because I cannot believe the legislature intended to place Iowa's prisoners beyond Iowa's jurisdiction while the prisoners are being transferred elsewhere under the interstate corrections compact, Iowa Code chapter 913 (1995). It is not surprising that Texas lost interest in prosecuting Iowa's prisoner for escaping there while being transferred to New Mexico. There would be some fear of a conviction, resulting in the transfer of confinement expenses from Iowa to Texas. Because Wagner's escape was clearly more an affront to Iowa authority than to Texas authority, dismissal of any charges in Texas would seem, to put it mildly, highly likely. The practical effect of the majority holding will be to greatly elevate attractiveness of escape for prisoners in transit. The holding will wreak havoc on activities being conducted in accordance with the compact.

This unfortunate holding strikes me as unnecessary. The majority does not suggest that Iowa is without power to retain jurisdiction over its prisoners while they are in transit elsewhere under the compact. The majority only holds that Iowa has not done so. Although the majority obviously is not impressed by them, I am convinced Iowa Code chapter 913 is replete with signals the legislature intended for Iowa, as "sending" state, to retain jurisdiction over prisoners in transit.

The signals are not surprising. The compact came about because states wanted to move their prisoners from state to state in order to share prison facilities for the mutual benefit of prisoners and the public. *See* Iowa Code § 913.2 (Art. I). The compact makes this effort possible by accommodating the impediment otherwise existing by virtue of each state's sovereignty within its borders.

But an effort was made, clearly expressed in Code chapter 913, to retain jurisdiction over the prisoners, as a "sending state," after transfer beyond our borders. For example, in article IV (unnumbered paragraph six) is a provision that any hearings to which the prisoner is entitled by reason of the laws of the sending state, may be held by the authorities of the sending state. Only with permission of the sending state can such a hearing be conducted by the authorities in the receiving state but if this happens "the officials of the receiving state shall act solely as agents of the sending state and no final determination shall be made in any matter except by the appropriate officials of the sending state."

In article IV (unnumbered paragraph seven) it is pointed out that a transferred prisoner cannot be released except within the territory of the sending state—or someplace designated by the sending state.

In the first unnumbered paragraph of article V it is provided that

[a]ny decision of the sending state in respect of any matter over which it retains jurisdiction pursuant to this compact shall be conclusive upon and not

reviewable within the receiving state....

Finally, the second unnumbered paragraph of article V provides that

[a]n inmate who escapes from an institution in which the inmate is confined pursuant to this compact shall be deemed a fugitive from the sending state and from the state in which the institution is situated. In the case of an escape to a jurisdiction other than the sending or receiving state, the responsibility for the institution of extradition or rendition proceedings shall be that of the sending state, but nothing contained herein shall be construed to prevent or affect the activities of the officers and agencies of any jurisdiction directed toward the apprehension and return of an escapee.

The thrust of Code chapter 913, as illustrated by the foregoing examples, is to preserve Iowa dominion over transit prisoners while sending them to confinement at prison facilities elsewhere. The legislature took pains to make this retention clear. I cannot believe the legislature intended to exempt transit prisoners from Iowa Code section 719.4(1) making it a crime to escape.

Because I think Iowa had jurisdiction, and because I would reject Wagner's other challenges not reached by the majority, I would affirm.

McGIVERIN, C.J., and LARSON and CARTER, JJ., join this dissent.