Eugene Francis BRUNO, Appellee,

v.

IOWA DEPARTMENT OF TRANS-
PORTATION, Motor Vehicle
Division, Appellant.

No. 98–765.

Supreme Court of Iowa.

Dec. 22, 1999.

Thomas J. Miller, Attorney General, David A. Ferree, Special Assistant Attorney General, and John W. Baty, Assistant Attorney General, for appellant.

James A. Sinclair of Sinclair & Associates, P.C., West Des Moines, and Dale E. Goeke of Hagemann, Goeke, Egli & Thalacker, Waverly, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

CARTER, Justice.

The Iowa Department of Transportation (DOT) appeals from a district court's ruling overturning that agency's decision to revoke the driver's license of the petitioner, Eugene Francis Bruno. It contends the district court erred by substituting its judgment for that of the agency on a factual determination. Bruno urges that the district court was correct and, as an issue on cross-appeal, contends that the length of the revocation was greater than allowed by law. After reviewing the record and considering the arguments presented, we reverse the judgment of the district court and uphold the DOT's revocation order. On the cross-appeal issue, we affirm the order of the DOT with respect to the length of the revocation.

A police officer gave Bruno a number of sobriety tests. He failed the horizontal gaze nystagmus test, a one-leg stand test, and a preliminary breath test. Prior to conducting the field sobriety tests, the officer did not note that Bruno was pigeon-toed with certain toes grown together. Nor was the officer aware that Bruno had sciatic nerve damage, causing numbness in one leg. Based on the results of the field sobriety tests, the officer invoked the implied-consent law. Bruno consented to an intoxilyzer test, which produced a reading of .179. Prior to performing either the preliminary breath test or the intoxilyzer test, the officer did not inquire as to whether Bruno had any foreign substance in his mouth. In fact, Bruno was wearing both upper and lower dentures. He did, however, ascertain that the subject being tested had not eaten or drunk anything for more than fifteen minutes prior to the test being administered.

Based on the .179 intoxilyzer reading, Bruno's license was revoked for a period of one year. He challenged that action at a hearing before an administrative law judge. He called as his witness a forensic expert in the areas of alcohol and breath testing who opined that the Intoxilyzer 4011A that was used to test Bruno's breath was not a reliable instrument. He also testified that the presence of false teeth could have affected the test's accuracy and that, considering all of the circumstances, the margin of error was nearly 100%.

The DOT called as its witness Robert Monserratte of the Iowa Criminalistics Laboratory. He testified that the Intoxilyzer 4011A is as good as or better than newer instruments on the market. It had been certified as accurate by the department of public safety approximately forty-five days prior to its use in testing Bruno. It was also the testimony of this witness that as long as it has been determined that Bruno had not eaten or drunk anything for at least fifteen minutes prior to the administration of the intoxilyzer test, the presence of dentures would not affect the machine's margin of error. He fixed that margin of error at five percent. Based on this evidence, the administrative law judge upheld the revocation. His decision was affirmed by the agency.

The district court reversed the DOT's decision, finding that the model 4011A was "antiquated in view of new technology in the area of breath testing" and lacking in reliability. It also ruled that the test was invalid as performed because of Bruno's false teeth.

**I.** *Whether the Agency's Decision That the Test, as Applied, Was a Valid Measure of Bruno's Alcohol Concentration Was Supported by Substantial Evidence.*

On the issues of the reliability of the 4011A Intoxilyzer and the validity of the test as applied to Bruno, there was a clear conflict in the evidence. Bruno's expert witness expressed one opinion, and the DOT's expert witness expressed a contrary opinion. Although testimony of Bruno's expert was persuasive and, if believed, raises substantial doubts concerning continued use of the 4011A Intoxilyzer as a measure of alcohol concentration, the agency, as a finder of fact, was not required to accept the views of that witness. *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 913 (Iowa 1987); *New Homestead v. Iowa Dep't of Job Serv.*, 322 N.W.2d 269, 270 (Iowa 1982); *Iowa Malleable Iron Co. v. Iowa Employment Sec. Comm'n*, 195 N.W.2d 714, 716–17 (Iowa 1972). The DOT's expert witness countered Bruno's claims of unreliability point by point, both as to the accuracy of the 4011A Intoxilyzer and as to the potential distortion of the margin of error by administering the test while Bruno was wearing dentures. We are convinced that these issues were inherently factual determinations and that the DOT's decision was supported by substantial evidence. The district court erred in disturbing the agency's findings as to these issues.

**II.** *Whether the Use of the 4011A Intoxilyzer Is Sanctioned for Purposes of Testing Alcohol Concentration.*

Bruno also contends that the use of the 4011A Intoxilyzer for purposes of determining alcohol concentration is not sanctioned by law. This argument is premised on the contention that this device does not meet the minimum performance requirements established by the National Highway Traffic Safety Administration. We find no merit in this contention. The stat-utory requirement for testing samples of breath for alcohol concentration is contained in Iowa Code section 321J.11 (1997). It provides that "any peace officer, using devices and methods approved by the commissioner of public safety, may take a specimen of a person's breath ... for the purpose of determining the alcohol concentration." Iowa Code § 321J.11.

In order to implement this statutory requirement, the department of public safety has promulgated the following regulation.

Although any breath testing device that meets the minimum performance requirements established by the National Highway Traffic Safety Administration or its successor is authorized by the commissioner to be employed or to be caused to be used to determine the alcohol concentration, the following devices are being used in Iowa at the time of the adoption of this rule and do meet those standards:

*a.* Intoxilyzer Model 4011A CMI, Inc., Minturn, Colorado (the device at issue here);

*b.* Mark IV Gas Chromatograph Intoximeters, Inc., St. Louis, Missouri;

*c.* Mark IVA Gas Chromatograph Intoximeters, Inc., St. Louis, Missouri;

*d.* Mark II Gas Chromatograph Intoximeters, Inc., St. Louis, Missouri;

*e.* Breathalyzer Model 1000 Smith & Wesson Electronics Co., Eatontown, New Jersey.

Iowa Admin. Code r. 661—7.2(3) (1997). We interpret the foregoing rule as verifying that each of the foregoing devices is approved for purposes of testing alcohol concentration in breath pursuant to section 321J.11. The reference to National Highway Traffic Safety Administration standards is only in regard to the department of public safety's authorization to use other units not specifically designated in the rule but which meet those standards. The rules of the commissioner also provide that all devices to be used must be certified to

be in proper working order within a period of one year immediately preceding use. Iowa Admin. Code r. 661—7.2(1). The device employed for testing Bruno's alcohol concentration was certified to be in proper working order approximately forty-five days prior to the initiation of implied-consent procedures in Bruno's case. We find no merit in his contention that the 4011A device was not a lawfully approved means of testing for alcohol concentration.

### III. Whether the Officer Had Reasonable Grounds to Believe That Bruno Had Been Operating Under the Influence.

 As an alternative argument seeking to uphold the district court's decision, Bruno urges that the officer did not have reasonable grounds to invoke the implied—consent procedure requiring a chemical test. A revocation based on test results showing an alcohol concentration of .10 or more is sanctioned by Iowa Code section 321J.12 if the procedures set forth in section 321J.6 have been followed. Those procedures require that the circumstances show "reasonable grounds to believe that the person [sought to be tested] had been operating a motor vehicle in violation of section 321J.2 [the statute rendering it a crime to drive under the influence]." Iowa Code § 321J.12(1); *see Westendorf v. Iowa Dep't of Transp.*, 400 N.W.2d 553, 555 (Iowa 1987) (interpreting the reasonable-grounds standard of section 321J.12 as previously numbered).

In the present case, even assuming that the one-leg stand and other dexterity tests given to Bruno were unreliable as a result of his physical limitations, we are convinced that other circumstances support the officer's conclusion that Bruno had been operating under the influence. He had difficulty pronouncing numbers, exhibited unsteady balance, leaned against the squad car for support, and smelled of alcohol. These factors and the circumstance that a minor personal injury accident had occurred support the officer's decision to test under section 321J.6.

### IV. Cross-appeal Issue on Length of Revocation.

As an issue on cross-appeal, Bruno urges that the length of revocation imposed was longer than permitted by law. He premises this contention on the fact that a prior revocation more than six years prior to the revocation in the present case should not be allowed to influence the length of the current revocation. Under the law in effect prior to July 1, 1997, Bruno's prior conviction for OWI and prior revocation record would have been expunged at the expiration of a six-year period that had expired prior to July 1, 1997. Given that circumstance, Bruno urges that the conviction and revocation record cannot be revived for purposes of enhancing his present revocation.

A statutory amendment contained in 1997 Iowa Acts chapter 177, section 4 (codified as Iowa Code section 321J.2(4)(a)), extended the time for expungement from six years to twelve years. Currently, any OWI conviction or deferred judgment that occurs within the previous twelve years counts as a prior offense. Bruno's claim that this is an unlawful retroactive application of the law has been rejected by this court in *State v. Garcia*, 600 N.W.2d 320, 321 (Iowa 1999), and *State v. Stoen*, 596 N.W.2d 504, 509 (Iowa 1999).

We have considered all issues presented and conclude that the judgment of the district court overturning the DOT's revocation of Bruno's license is reversed. The length of the DOT's suspension, as challenged on Bruno's cross-appeal, is affirmed.

**REVERSED ON APPEAL; AFFIRMED ON CROSS APPEAL.**