STATE of Iowa, Plaintiff,

v.

## IOWA DISTRICT COURT FOR JOHNSON COUNTY, Defendant.

No. 99–1836.

Supreme Court of Iowa.

July 5, 2001.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, J. Patrick White, County Attorney, and Linda M. Paulson, Assistant County Attorney, for plaintiff.

Linda Del Gallo, State Appellate Defender, and Stephan J. Japuntich, Assistant State Appellate Defender, for defendant.

SNELL, Justice.

This case comes to us on further review from the court of appeals, where the district court's opinion was upheld. Because

we determine that a sentencing court has no authority to drop the third digit of an intoxilyzer reading, we vacate the decision of the court of appeals and sustain the writ. The case is remanded to the district court for resentencing.

## I. Factual Background and Procedure

The facts providing the basis for this appeal are quite simple. A drunk driver, Seth Matthew Scott, provided two readings to Johnson County police on the night he was arrested. His preliminary breath test conducted at the scene of the offense was .13. Later, he gave an intoxilyzer reading of .153. Scott pled guilty to OWI, first offense, a serious misdemeanor. Iowa Code § 321J.2(2)(a) (1999). He requested a deferred judgment.

The sentencing court considered the two test results together, stating: "The Court does not disregard either test" and finds the preliminary breath test result was the "most proximate to the Defendant's blood alcohol concentration at the time he operated his motor vehicle." The court then chose to drop the third digit of the .153 intoxilyzer reading and grant a deferred judgment. The State argues each action was in error. First, because the relevant statute clearly holds that preliminary breath tests should be discarded in sentencing proceedings, the court was not at liberty to be persuaded, if indeed it was, by the preliminary breath test reading. *See id.* § 321J.5(2). And second, because a defendant is precluded from receiving a deferred judgment if his test result is greater than .15, the decision to drop the third digit enabled the court to grant the OWI offender a deferred judgment where it would have been otherwise unable to do so. *See id.* § 321J.2(3)(a)(1).

The State filed a writ of certiorari with this court. We chose to let the court of appeals decide the merits of the writ. Although the court of appeals recognized that the district court impermissibly considered the preliminary breath test reading, it found this was not reversible error, as the court also considered the intoxilyzer results. It then determined that the district court properly discarded the third digit of the intoxilyzer reading because the district court took judicial notice of the machine's manual, which it felt indicated that the first two digits are "determinative." On further review, the State argues that under a plain reading of section 321J.2(3)(a)(1), the district court is not authorized to drop the third digit of a reading admitted into evidence.

## II. Scope and Standard of Review

■ Our review on writ of certiorari is for correction of errors at law. *Hewitt v. Iowa Dist. Ct.*, 538 N.W.2d 291, 292 (Iowa 1995). To the extent we are required to pass judgment on the district court's interpretation of a legislative provision, we likewise review for legal error. *State v. Francois*, 577 N.W.2d 417, 417 (Iowa 1998). "When the text of a statute is plain and its meaning clear, the court should not search for a meaning beyond the express terms of the statute...." *Henriksen v. Younglove Constr.*, 540 N.W.2d 254, 258 (Iowa 1995). Only when we "find[ ] a statute is ambiguous or that reasonable minds could differ as to its meaning, ... should [we] look to the rules of statutory construction for the interpretation." *State v. Maher*, 618 N.W.2d 303, 304 (Iowa 2000) (citing *State v. Rodgers*, 560 N.W.2d 585, 586 (Iowa 1997)).

## III. Issue on Appeal

■ We agree with the court of appeals that by considering the preliminary breath test score, the district court acted contrary to section 321J.5(2), which reads:

The results of this preliminary screening test may be used for the purpose of deciding whether an arrest should be made or whether to request a chemical test authorized in this chapter, *but shall not be used in any court action* except to prove that a chemical test was properly requested of a person pursuant to this chapter.

Iowa Code § 321J.5(2) (emphasis added).

It is apparent here that the district court was partially persuaded by the lower preliminary breath test score to grant a deferred judgment, otherwise there was no need to affirmatively state the court chose not to disregard it. Clearly, this decision is contrary to section 321J.5(2). *Id.; accord State v. Iowa Dist. Ct.,* 617 N.W.2d 33, 35–36 (Iowa Ct.App.2000) (overruling the decision to grant a deferred judgment when the preliminary test score was .15, but the intoxilyzer score was .161). The trial court is not at liberty to be persuaded to grant a deferred judgment by considering a preliminary breath test score. A sentencing decision influenced by improperly considering a preliminary test result is a decision based on an error of law. Iowa Code § 321J.5(2); *accord Iowa Dist. Ct.,* 617 N.W.2d at 35 ("The Code section ... plainly states the preliminary test may not be used in any court action except for the limited purpose so defined, which does not include use for determining a sentencing option.").

■ The court of appeals recognized this error, but held it was not reversible error because the district court's sentence was also based upon an intoxilyzer score of .15. The district court arrived at this number by dropping the third digit of the .153 reading as per the machine's operating manual, which indicated that "only the first two digits are used." Such an action was contrary to section 321J.2(3)(a)(1). The district court does not have authority to drop the third digit of an intoxilyzer reading for any reason.

■ Iowa Code section 321J.2(3)(a)(1) states that a deferred judgment may not be granted if a defendant's intoxilyzer test results exceed .15. This provision reads:

3. a. Notwithstanding the provisions of sections 901.5 and 907.3, *the court shall not defer judgment* or sentencing ... if any of the following apply:

(1) *If the defendant's alcohol concentration* established by the results of an analysis of a specimen of the defendant's blood, breath, or urine withdrawn in accordance with this chapter *exceeds .15,* regardless of whether or not the alcohol concentration indicated by the chemical test minus the established margin of error inherent in the device or method used to conduct the test equals an alcohol concentration of .15 or more.

Iowa Code § 321J.2(3)(a)(1) (emphasis added). The defendant's results here were .153. This score is greater than .15 in all respects. As such, the defendant was not eligible for a deferred judgment.

It is a well-known fact that intoxilyzer machines display three digits. Our cases which discuss intoxilyzer readings overwhelmingly relate the score using a three-digit number. *Bruno v. Iowa Dep't of Transp.,* 603 N.W.2d 596, 597 (Iowa 1999); *State v. Nelson,* 600 N.W.2d 598, 599 (Iowa 1999); *State v. Guzman–Juarez,* 591 N.W.2d 1, 2 (Iowa 1999); *State v. Johnson,* 569 N.W.2d 603, 604 (Iowa 1997); *State v. Lloyd,* 513 N.W.2d 742, 743 (Iowa 1994); *State v. Rosenstiel,* 473 N.W.2d 59, 61 (Iowa 1991), *overruled on other grounds by State v. Cline,* 617 N.W.2d 277 (Iowa 2000). The legislature likely knew this fact when it composed section 321J.2(3)(a)(1). It chose the number .15 as its cut-off, not .159.

The legislature has clearly recognized that intoxilyzer test results are reliable and accurate enough to form the basis for a defendant's sentence. Iowa Code § 321J.2(3)(a)(1) (indicating that breath test results can be considered for sentencing). Further, this section was recently amended to disallow a margin of error reduction to the score for sentencing determinations. *See* 1998 Iowa Acts ch. 1138, § 3; *see also Guzman–Juarez,* 591 N.W.2d at 2–4 (finding that the legislative intent was to preclude score reduction by the margin of error even before the amendment). The margin of error for this machine is I.004 (a three-digit number). By disallowing the lowering of the scores by .004, the legislature was aware that those with a score of .16 would not have the benefit of a decreased score into the "safe territory" recognized by the district court and the court of appeals. This is likely because the legislature did not intend this area to be a safe harbor, as it is greater than .15. Likewise, this evidences an intent by the legislature not to resolve the machine's shortcomings in favor of defendants for purposes of sentencing.

Previous cases have recognized that a three-digit reading above .15 justifies stricter sentencing. *See, e.g., State v. Rettinghaus,* 591 N.W.2d 15, 16 (Iowa 1999). Specifically, *Guzman–Juarez* involved a defendant with a .154 reading that the court refused to lower by the margin of error. *Guzman–Juarez,* 591 N.W.2d at 2. We held that the statute precludes the lowering of the score by the margin of error, thus, the defendant's inability to receive a deferred judgment was allowed to stand. Although we were not asked if the third digit could be dropped, we noted: "Because the defendant's test results were *more than .15,* the trial court correctly ruled that the defendant was not eligible for a deferred judgment." *Id.* at 4 (emphasis added). Moreover, we clearly acknowledged that if the score were reduced by its margin of error, it would lead to a different result. "The intoxilyzer certification established a margin of error of I.004. . . . Applying [this] figure to the defendant's alcohol concentration of .154 results in a number that does not exceed .15," which would "mak[e] him eligible for a deferred judgment." *Id.* at 2 & n.1. These statements evidence a clear and unmistakable recognition that because the defendant's score was .154, he was *ineligible* for a deferred judgment.

Further, if the legislature did not intend the three-digit reading to be used, there would be no need to disallow the use of the margin of error reduction. *See generally Jenney v. Iowa Dist. Ct.,* 456 N.W.2d 921, 923 (Iowa 1990)("We assume an amendment is adopted to accomplish a purpose and was not simply a futile exercise of legislative power."). For example, if a court is allowed to drop the third digit of a .154 reading, the defendant is always eligible for a deferred judgment regardless that he did not receive the margin of error reduction. Therefore, the language prohibiting a margin of error reduction would be useless and unnecessary.

Accordingly, we find that section 321J.2(3)(a)(1) does not give the district court discretion to drop the third digit. Clearly, the legislature's preference is that this subsection be interpreted against granting deferred sentences. This is evidenced by its decision to amend the subsection in 1998, quelling any doubt that a score can be reduced by its margin of error. *See* 1998 Iowa Acts ch. 1138, § 3.

▮▮▮▮ When a statute's plain meaning is clear, an attempt to suggest it is ambiguous to lead to a favorable result must fail. *See Maher,* 618 N.W.2d at 305 ("If the statute in question is not ambiguous, the determination is complete."). When a

statute is not ambiguous, we are not at liberty to search for a meaning outside its terms, *e.g.,* by looking at an operating manual. *Id.; Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Mobil Oil Corp.,* 606 N.W.2d 359, 363 (Iowa 2000); *Henriksen,* 540 N.W.2d at 258. As such, when a statute's interpretation comes down to the plain meaning versus a manual's direction—plain meaning must prevail. *See Teggatz v. Ringleb,* 610 N.W.2d 527, 530 (Iowa 2000). The statute indicates *any* number over .15 defeats a deferred judgment sentence. "To adopt the [district court's] interpretation of this statute would require us to read something into the law that is not apparent from the words chosen by the legislature. This we cannot do." *Guzman–Juarez,* 591 N.W.2d at 2. As such, in the present case, "the court selected a sentence not allowed by law under the facts of [the] case." *Iowa Dist. Ct.,* 617 N.W.2d at 35.

The defendant argues that a conclusion contrary to the district court's interpretation would violate his constitutional due process rights. He also contends that the State's interpretation of section 321J.2(3)(a)(1) renders this section void for vagueness. We find these arguments unpersuasive.

■ The defendant suggests that using the third digit is imprecise. He argues that if our court allows the use of the third digit, this obviates the State's burden, thus offending his right to due process. We disagree. First, nowhere in the manual does it state or even hint that the third digit is inaccurate. Second, section 321J.2(3)(a)(1) deals with sentencing, where the burden is no longer beyond a reasonable doubt. After guilt has been determined, evidence to support the sentence need only be proven by a preponderance of the evidence. *State v. Grandberry,* 619 N.W.2d 399, 401 (Iowa 2000) ("The

standard of proof during the sentencing stage is lower than the standard used during trial."); *Rettinghaus,* 591 N.W.2d at 17 ("Outcome determinative sentencing data need only be found to exist by a preponderance of the evidence."). Even if the third digit may be somewhat less precise, because the burden is the lesser preponderance of the evidence standard, no due process violation occurs by allowing use of the third digit for sentencing. *Rettinghaus,* 591 N.W.2d at 16–17.

■ The defendant's void for vagueness argument is similarly meritless because the statute is sufficiently definite to alert the ordinary citizen of its meaning. The average person knows or should know that .153 is greater than .15. As such, our interpretation has no constitutional impediments.

**DECISION OF COURT OF APPEALS VACATED; WRIT SUSTAINED; CASE REMANDED FOR RESENTENCING.**

All justices concur except NEUMAN, J., who takes no part.