Ruth A. THILGES, Appellant,

v.

**SNAP–ON TOOLS CORPORATION and Royal Insurance Company,**
Appellees.

No. 93–1354.

Supreme Court of Iowa.

March 29, 1995.

Mark S. Soldat, Algona, for appellant.

Paul C. Thune, Des Moines, for appellees.

Considered by HARRIS, P.J., and CARTER, NEUMAN, ANDREASEN, and TERNUS, JJ.

CARTER, Justice.

This appeal involves judicial review of the Industrial Commissioner's action in fixing workers' compensation benefits based on a cumulative injury. The proceeding was brought pursuant to Iowa Code section 17A.19 (1991). The district court upheld the commissioner's award of benefits, interest, and penalties in all respects except the computation of the appropriate wage rate.[1] Both the employee, petitioner Ruth A. Thilges, and the employer and insurance carrier, Snap–On Tools Corporation and Royal Insurance Company, appeal from that portion of the district court's order that was adverse to them. After reviewing the record and considering the arguments presented, we affirm the district court's order on both appeals.

Petitioner was in good health when she started working for Snap–On Tools in April 1978. She began experiencing pain in her shoulders, hands, and back as early as December 1985. In July 1987, she had carpal

---

1. The district court also concluded that petitioner's claim concerning penalties for untimely payment of temporary disability payments, although clearly raised, had not been ruled on by the industrial commissioner. It remanded the case to the agency for that purpose. Neither party challenges that action on the present appeal.

tunnel surgery on her right hand, shoulder treatments in October, and carpal tunnel surgery to her left hand in December. In February 1988, she had surgery related to de Quervain Syndrome in her left thumb and an impingement syndrome in her right shoulder. In May 1988, petitioner was released to work four hours per day with permanent restrictions against repetitive use of her right upper extremity above chest level. She increased work to eight hours per day by June 15, 1988.

Petitioner missed work for fourteen days in September 1988 because of her left thumb. In November 1988, a physician treating her determined that she had a nine percent permanent impairment to her upper right extremity. In June 1989, another physician determined she had a four percent permanent impairment of her left thumb and a five percent permanent impairment of each upper extremity.

Petitioner filed five petitions with the commissioner seeking to establish separate industrial injuries. At the time of the hearing before the agency, the employer had accommodated petitioner's work restrictions and her earnings were not reduced as a result of that accommodation.

After hearing the evidence, the deputy commissioner found, among other things, that petitioner's alleged injuries of August 5, 1986, June 3, 1987, and December 4, 1987, constituted one cumulative compensable injury that occurred on July 8, 1987. The proposed decision found the employer was subject to a fifty percent penalty for failing to pay permanent partial disability based on scheduled member injuries when it received the impairment ratings from the treating physicians. The commissioner adopted the proposed decision of the deputy, except as to the amount of healing-period compensation. As to that element, the commissioner granted additional allowances favorable to petitioner.

I. *Commissioner's Determination of Anticipated Loss of Earning Capacity.*

Petitioner argues that the finding by the commissioner of a twenty percent permanent partial disability is in error because, in considering her anticipated loss of future earning capacity, the commissioner refused to consider lost earning capacity beyond the time proximate to when the hearing was held. She contends that loss of earning capacity should be established with reference to loss of earnings that the injured employee will experience over that person's lifetime. In her view, the percentage of permanent partial disability should be expressed by a fraction in which anticipated lifetime earnings with the injury is the numerator and anticipated lifetime earnings without the injury is the denominator. The commissioner, she argues, did not use that approach and viewed loss of earning capacity in terms of the loss of immediate periodic earning potential if the petitioner were forced to seek work in the competitive job market at the time of the hearing without regard to the accommodations provided by her existing employer.

We have recognized that, in determining the extent of a claimant's body-as-a-whole industrial disability, the question is "the extent to which the injury reduced [the claimant's] earning capacity." *Guyton v. Irving Jensen Co.,* 373 N.W.2d 101, 104 (Iowa 1985). In considering the matter in *Guyton,* we stated:

> The question is the extent to which the injury reduced Guyton's earning capacity. This inquiry cannot be answered merely by exploring the limitations on his ability to perform physical activity associated with employment. It requires consideration of all the factors that bear on his actual employability.

*Id.* In our earlier decision of *Doerfer Division of CCA v. Nicol,* 359 N.W.2d 428 (Iowa 1984), we observed that the matters to be considered in this regard include age, education, qualification, experience, and inability due to injury, to engage in the employment for which the claimant is fitted. *Id.* at 438.

The arbitration decision of the deputy commissioner, which was adopted as the final agency determination of the issue stated:

> In the competitive employment market a person in their mid–40s who has had a de Quervain release of the left thumb, bilateral carpal tunnel surgery on each hand and

wrist, and a shoulder decompression of the right shoulder, who is restricted from no repetitive work above the chest level, will find it difficult to find employment when these factors are considered in conjunction with claimant's education, past employments and lack of transferrable skills. Employer's accommodation for claimant's permanent impairments and permanent restrictions and other bodily complaints will not necessarily transfer, however, to the competitive labor market as a whole.... Claimant is not likely to find other employers in the competitive employment market as understanding, cooperative and helpful as this employer has been.... For these reasons claimant is entitled to an industrial disability allowance in excess of her permanent impairment rating.

We are satisfied that the appropriate factors relating to petitioner's loss of earning capacity were considered by the commissioner.

In considering petitioner's argument, we are satisfied that the commissioner was correct in viewing loss of earning capacity in terms of the injured worker's present ability to earn in the competitive job market without regard to the accommodation furnished by one's present employer. That characterization of loss of earning capacity is consistent with our recognition in *ENT Associates v. Collentine*, 525 N.W.2d 827 (Iowa 1994), that a change in earning capacity may be made the subject of a review reopening proceeding in which permanent partial disability benefits may be increased without any showing in a change of physical condition. *Id.* at 829. The result approved in *Collentine* strongly suggests that an injured employee's earning capacity for purposes of fixing the percentage of permanent partial disability is based on present conditions and does not focus on the employee's remaining working future in its entirety. We find no basis for disturbing the commissioner's award of permanent partial disability benefits.

II. *Entitlement to Wages Lost in Seeking Medical Care Not Approved by Employer.*

■ During her hearing before the commissioner, petitioner requested she be awarded compensation for those occasions when she was absent from work in order to attend medical appointments for her work-related injuries. These appointments were not arranged for or approved by her employer.

It is provided in Iowa Code section 85.39 (1991) that,

[i]f an employee is required to leave work for which the employee is being paid wages to attend the requested examination, the employee shall be compensated at the employee's regular rate for the time the employee is required to leave work....

*Id.* We believe that section 85.39 was designed for those occasions when the employer requests that the employee submit to an exam by a physician of the employer's choosing. Petitioner does not meet the conditions for benefit allowances under this statute.

■ In the alternative, petitioner argues that even if she does not meet the conditions of section 85.39 she should be compensated for this lost time as part of the healing-period benefits. Nowhere in Iowa Code section 85.33(2) or (3) dealing with temporary total, temporary partial, and healing-period benefits is there any indication that a claimant shall be awarded benefits for lost time due to medical appointments if the conditions of section 85.39 are not satisfied. The commissioner was correct in not granting benefits for wages lost as a result of these medical appointments.

III. *Failure to Circumscribe the Cumulative Injury Period With Specific Beginning and Ending Dates.*

■ At the time of the hearing, the commissioner found that petitioner's injuries to her thumb, arms, and shoulder constituted one cumulative compensable injury that occurred on July 8, 1987, which was the date when she was first forced to leave work for her carpal tunnel surgery. In her posthearing brief to the deputy commissioner, she requested that a finding of a cumulative injury period ending date of May 14, 1990, be assigned. The deputy commissioner declined this request.

In petitioner's appeal brief to the commissioner, she assigned as error the deputy's refusal to identify an ending date of her cumulative injury. Her theory underlying this argument is that an ending date should be established so as to demarcate this cumulative injury from any subsequent injuries. We disagree.

The recognition of the cumulative injury doctrine as a basis for recovery of workers' compensation benefits must be reconciled with the general statutory scheme for payment of benefits. This requires that a date of injury be established in order that it may be known which employer and carrier is at risk, whether notice of injury and claim are within the statutory period, whether statutory amendments were in effect, which wage basis applies, and other important considerations. *See Oscar Mayer Foods Corp. v. Tasler*, 483 N.W.2d 824, 829 (Iowa 1992). This date is to be tied, as nearly as possible, to the time at which the disability first manifests itself. *Id.* In the present case, the commissioner determined this time to have been July 8, 1987, when petitioner was first forced to leave work for her carpal tunnel surgery. Petitioner makes no challenge to this finding as an appropriate date of injury.

Once the commissioner established a date of injury, he was under no further obligation to fix a time of beginning for the period of cumulative events that produced the manifestation of injury on July 8, 1987. Those events, although important evidence in the case, need not be precisely fixed as to time of occurrence. Similarly, once it is determined that the disability manifested itself on a particular date, that is the "ending date" for purposes of the commissioner's adjudication. Occurrences subsequent to that date are not outcome determinative. Thus, there would be no purpose in the commissioner's establishing a chronology as to those subsequent occurrences.

IV. *Basis for Computing Late Payment Penalties Under Iowa Code Section 86.13.*

If there is a delay in the commencement of benefits and there is no reasonable or probable cause or excuse for such delay, "the industrial commissioner shall award benefits in addition to those benefits payable under this chapter, or chapter 85, 85A, or 85B, up to fifty percent of the amount of benefits that were unreasonably delayed or denied." Iowa Code § 86.13 (1991). Petitioner asserts and the commissioner found that the employer failed to make disability payments based on the scheduled member injuries when it received the permanent impairment ratings. In his decision, the commissioner determined that not only did the employer fail to make timely payments, no reasonable or probable cause or excuse was given for the delay.

Based upon his findings as to the delay, the commissioner looked to petitioner's permanent impairment ratings of four percent to the left thumb, five percent of the left upper extremity and five percent of the right upper extremity. The information regarding these impairment ratings was given to the employer on July 12, 1989; however, no payment was made for the thumb until December 20, 1989, and no payment was made for the hands until February 14, 1990. Based upon this information, the commissioner held the claimant was entitled to "a minimum of four percent of 60 weeks for the thumb which is 2.4 weeks; five percent of 250 weeks for the left arm which is 12.5 weeks; and five percent of 250 weeks for the right arm which is another 12.5 weeks for a total of 27.4 weeks of benefits." The commissioner then took the total of 27.4 weeks times the rate for the July 8, 1987 injury of $245.54 for a total of $6727.80. A penalty for fifty percent of this amount was assessed. The commissioner assessed a similar fifty percent penalty for the shoulder injury based on scheduled member impairment benefits of $5524.65.

Petitioner argues that penalties assessed as a percentage of benefits should have been based on benefits computed on the combined and converted rate rather than the separate scheduled member impairment ratings for the individual injuries. We disagree. If the employer or insurance carrier were required to use the combined and converted rate, that would have been good cause for delaying benefit payments until the determination of the combined rate was finalized by the com-

missioner. A finding that the benefits should have commenced at an earlier time necessarily carries with it a determination that earlier payment was to have been based on the scheduled member impairment and later reconciled as part of the total award of temporary and permanent disability benefits.

### V. *Employer's Cross–Appeal Claim Concerning Appropriate Wage Rate.*

■ In determining the appropriate wage rate for petitioner's cumulative injury, the commissioner arrived at an amount of $245.54, which was based upon average weekly earnings of $373.55. The commissioner arrived at this amount by including in his determination several weeks in which petitioner worked less than forty hours. The district court reversed this determination, holding that only forty-hour weeks should be considered. The employer challenges that determination on this appeal.

The relevant statute provides:

The basis of computation shall be the weekly earnings of the injured employee at the time of the injury. *Weekly earnings means gross salary, wages, or earnings of an employee to which such employee would have been entitled had the employee worked the customary hours for the full pay period....*

Iowa Code § 85.36 (1991) (emphasis added). Although petitioner in fact worked less than forty hours during seven of the thirteen weeks immediately prior to the injury date of July 8, 1987, it also appears that this was the result of unanticipated occurrences that caused her to miss work on certain days. The customary hours for the full pay period for her job were, as the district court determined, a forty-hour week. We reject the employer's claims on its cross-appeal.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed on both appeals.

**AFFIRMED ON BOTH APPEALS.**