Sandra **WEISHAAR** n/k/a Sandra
Schadendorf, Appellee,

v.

**SNAP–ON TOOLS CORPORATION**
and Royal Insurance Company,
Appellants.

No. 96–1718.

Supreme Court of Iowa.

July 29, 1998.

Paul C. Thune and Michael S. Roling, Des Moines, for appellants.

Mark S. Soldat, Algona, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and ANDREASEN, JJ.

LARSON, Justice.

This appeal is the latest in a long series of workers' compensation proceedings involving Sandra Weishaar and her former employer, Snap–On Tools Corporation. Snap–On asserts that all of Weishaar's present claims are precluded by an earlier ruling by the industrial commissioner, and the district court erred when it ruled otherwise. Snap–On also complains that the district court erred in setting the compensation rate for one of the injuries. Weishaar contends, in a cross-appeal, that the district court erroneously limited her evidence concerning a cumulative injury and erroneously computed her benefits. We affirm on Snap–On's appeal, reverse on Weishaar's cross-appeal, and remand.

## I.  *Facts and Judicial Proceedings.*

Sandra Weishaar was employed as a materials handler at Snap–On Tools between 1978 and 1991. In 1985 she began to develop pain and irritation in her hands and eventually underwent carpal tunnel surgery. She also developed shoulder and back pain. Her doctors placed restrictions on her work and required her to be routed to easier jobs.

On May 1, 1987, Weishaar filed a workers' compensation petition, alleging that she had sustained an injury to her shoulders and arms and had been disabled periodically since 1985. She sought temporary and permanent disability compensation and healing-period benefits. A deputy industrial commissioner issued an arbitration decision on Weishaar's claims on July 13, 1989. The deputy found that Weishaar had incurred a bilateral carpal tunnel injury on September 3, 1985,

and awarded benefits for impairment to her body as a whole. In the part of the ruling that Snap–On now relies on to establish res judicata, the deputy found that Weishaar's shoulder and back disability was not causally connected to an injury of April 29, 1986.

Weishaar appealed. The industrial commissioner found in part that Weishaar "failed to prove she received any work-related shoulder or back injury for the injury dates alleged," and that her back and shoulder conditions were not the result of the carpal tunnel injury.

Weishaar petitioned for judicial review. The district court remanded for the commissioner to consider additional evidence in the record regarding the shoulder/back injury. Weishaar appealed, and the court of appeals affirmed in part and reversed in part. *Weishaar v. Snap–On Tools Corp.*, 506 N.W.2d 786 (Iowa App.1993). On the issue relevant to the current appeal, the court of appeals affirmed the finding of the industrial commissioner that Weishaar did not sustain a permanent impairment to her back or shoulders. *Id.* at 790.

Meanwhile, on July 27, 1989, Weishaar filed the ten new petitions that are the subject of the present appeal. In November 1994 a deputy industrial commissioner ruled that the first nine claims, alleging specific dates of injury, were res judicata because they had been decided by the court of appeals in 1993. The deputy awarded limited benefits under the tenth petition, which claimed a cumulative injury. Weishaar appealed. The industrial commissioner affirmed, on res judicata grounds, as to the first nine petitions; on the tenth, the commissioner awarded limited benefits for Weishaar's cumulative injury.

Weishaar again sought judicial review. The district court ruled that res judicata did not apply and remanded for a hearing on the merits and a determination of the proper compensation rate. The district court generally affirmed the industrial commissioner's restrictions on workers' compensation for her cumulative injury under her tenth petition but remanded the case on the tenth claim for a determination of the proper rate for Weish-

aar's January 17, 1991 injury. Snap–On appealed, and Weishaar cross-appealed.

## II. *The Res Judicata Issue.*

Snap–On contends that Weishaar's present claims are precluded by res judicata. It argues that all of Weishaar's claims prior to March 21, 1989 (the date of the first hearing) are barred because they had been adjudicated in that proceeding. (Snap–On uses the term "res judicata" to mean both issue preclusion and claim preclusion.)

Weishaar's original claim alleged that she had sustained an injury to her shoulders and arms "[b]y virtue of daily and regular [repetitive] and strenuous job tasks involving the arms and shoulders," and alleged that the time of disablement was "[p]eriodically since 1985." A deputy industrial commissioner ordered her to amend her petition to state a date of injury. She did so and filed a second amendment striking paragraph four of her original notice and petition and substituting the following:

> "4. Injuries occurred cumulatively, until September 3, 1985, when right wrist required first treatment, April 14, 1986, when left wrist required first treatment, and April 29, 1986, when shoulders extending to upper mid back first required treatment."

The commissioner assigned three separate file numbers to these dates of injury, and the case proceeded to hearing. The deputy found that Weishaar had "incurred a bilateral carpal tunnel injury as a result of a cumulative single injury on September 3, 1985, to her right and left hands" but that she "failed to prove she received any work-related shoulder or back injury *on April 29, 1986.*" (Emphasis added.) (It is this last conclusion that Snap–On relies on to support its res judicata argument.)

Despite the narrow language of these findings (which were limited to injuries incurred only on April 29, 1986), Snap–On argues that "all disability running up through December 29, 1988 [the date of the last cumulative injury alleged], was considered to be part of the prior case. Weishaar is therefore barred from proceeding further ... under the doctrine of res judicata." When the deputy and

industrial commissioners reviewed Weishaar's claims in the second case, they determined that the claims were res judicata.

### A. Claim preclusion.

■ "[C]laim preclusion" ... mean[s] that further litigation on the claim is prohibited and "issue preclusion" ... mean[s] that further litigation on a specific issue is barred.

Res judicata as claim preclusion applies when a litigant has brought an action, an adjudication has occurred, and the litigant is thereafter foreclosed from further litigation on the claim. An adjudication in a former suit between the same parties on the same claim is final as to all matters which could have been presented to the court for determination. A party must litigate all matters growing out of its claim at one time rather than in separate actions.... The right to join related causes of action does not bar subsequent litigation of a distinct cause of action that was not joined.

*Israel v. Farmers Mut. Ins. Ass'n of Iowa*, 339 N.W.2d 143, 146 (Iowa 1983) (citations omitted).

Snap–On argues that "the Commissioner considered all evidence running up through December 29, 1988 which is the same evidence that Weishaar will need to maintain the current actions." *See B & B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 279, 287 (Iowa 1976) ("Our cases say identity of cause of action is established when the same evidence will maintain both actions."). However, "the right to join related claims does not bar subsequent litigation of a distinct claim that was not joined." *Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 460 N.W.2d 858, 860 (Iowa 1990).

"In general, the expression [transaction or a series of transactions] connotes a natural grouping or common nucleus of operative facts. Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes. Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first. If there is a substantial overlap, the second action should ordinarily be held to [be] precluded. But the opposite does not hold true; even when there is not a substantial overlap, the second action may be precluded if it stems from the same transaction or series."

*Id.* (quoting Restatement (Second) of Judgments § 24 cmt. b (1982)).

Weishaar's original claim, brought in 1987, concerned a shoulder and back injury from an April 29, 1986 incident. In contrast, the first nine claims that she brought in the second action arose between September 1987 and October 1988. While the commissioner considered some of the same evidence in the two cases, they involved distinctly different injury dates. It is true that the claims in the second action and the shoulder/back claim in the first action arose because of Weishaar's work at Snap–On, but this does not mean that they are the same " 'natural grouping or common nucleus of operative facts' " or are " 'so woven together as to constitute a single claim.' " *See Leuchtenmacher*, 460 N.W.2d at 861 (quoting Restatement (Second) of Judgments § 24 cmt. b). Claim preclusion does not apply, and the district court was correct in so ruling.

### B. Issue preclusion.

■ Snap–On also argues that the issues of permanent impairment and industrial disability in claims one through nine of the present case are precluded under the doctrine of issue preclusion.

■ The prerequisites for issue preclusion are well established:

(1) The issue concluded must be identical;

(2) The issue must have been raised and litigated in the prior action;

(3) The issue must have been material and relevant to the disposition of the prior action; and

(4) The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Israel,* 339 N.W.2d at 146 (citing *Aid Ins. Co. (Mut.) v. Chrest,* 336 N.W.2d 437, 439 (Iowa 1983); *Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981)).

The issue that Weishaar "raised and litigated" in the present case was whether she suffered a cumulative injury to the whole body over a period of time. However, in the earlier proceeding, the commissioner adjudicated the issue of cumulative injury to the whole body that had allegedly occurred on a specific date, April 29, 1986. The specific issue in the present litigation, whether Weishaar incurred an injury to the whole body at other particular dates or as a cumulative injury to the whole body occurring between 1982 and 1991, is not the same.

In deciding whether Weishaar had suffered a cumulative injury on April 29, 1986, the deputy likely considered evidence of later injuries that could have affected the cumulative-injury determination. This court and the court of appeals have discussed the cumulative-injury rule in four primary cases. *See George A. Hormel & Co. v. Jordan,* 569 N.W.2d 148 (Iowa 1997); *Oscar Mayer Foods Corp. v. Tasler,* 483 N.W.2d 824 (Iowa 1992); *McKeever Custom Cabinets v. Smith,* 379 N.W.2d 368 (Iowa 1985); *Venenga v. John Deere Component Works,* 498 N.W.2d 422 (Iowa App.1993).

▇ The most recent case, *Hormel,* affirmed the *Tasler* two-part test for cumulative injuries from repetitive workplace trauma:

The deputy's determination ... must rest on the proper legal standard—here, the two-part *Tasler* manifestation test: the date on which the claimant, as a reasonable person, would be plainly aware of (1) the injury and (2) the causal relationship between the injury and claimant's employment.

*Hormel,* 569 N.W.2d at 152. The commissioner apparently treated April 29, 1986, as the manifestation date; however, a determination of disability as of that date would not be the same issue as a determination of disability on subsequent dates. The issues were not identical between the two cases, and the district court correctly rejected the issue-preclusion argument.

We affirm on Snap–On's appeal.

### III. *Compensation Rate For "Customary" Work Week.*

▇ The deputy and industrial commissioner computed a compensation rate only for the tenth injury because they found that the other claims were barred by res judicata. As to the tenth claim, the commissioner assessed Weishaar's wage rate at $264.58, based on her average weekly earnings of $412.66. However, the district court found that the deputy and commissioner committed legal error by including the weeks ending July 14, 1990, and August 25, 1990, in the computation of average earnings because they were twenty-four-hour and nineteen-hour weeks and therefore were not "customary" under Iowa Code section 85.36 (1995).

The district court's conclusion was based on *Thilges v. Snap–On Tools Corp.,* 528 N.W.2d 614, 619 (Iowa 1995). In *Thilges* we held that only forty-hour weeks were to be included in the computation of the claimant's benefits because these were the employee's customary hours.

Iowa Code section 85.36 provides:

The basis of compensation shall be the weekly earnings of the injured employee at the time of the injury. Weekly earnings means gross salary, wages, or earnings of an employee to which such employee would have been entitled had the employee worked the *customary hours* for the full pay period in which the employee was injured, as regularly required by the employee's employer for the work or employment for which the employee was employed ...:

. . . .

6. In the case of an employee who is paid on a daily, or hourly basis, or by the output of the employee, the weekly earnings shall be computed by dividing by thirteen the earnings, not including overtime or premium pay, of said employee earned

in the employ of the employer in the last completed period of thirteen consecutive calendar weeks immediately preceding the injury.

(Emphasis added.)

In *Thilges* we held that the customary hours for the full pay period for the claimant's job were forty hours even though the claimant had worked less than forty hours in seven of the thirteen weeks preceding the injury because "unanticipated occurrences ... caused her to miss work on certain days." *Thilges,* 528 N.W.2d at 619.

According to Weishaar's testimony, she was never scheduled for less than forty hours unless she was under medical restrictions. A coworker testified that the coworker, also, had never been scheduled to work less than forty hours in the fifteen years she worked at Snap–On.

Snap–On argues that it makes no sense for the statute to require averaging of the thirteen weeks prior to the injury, if the commissioner can only consider forty-hour weeks if they are customary. However, *Thilges* is clear: if a forty-hour week is customary for the particular employee, that must be the basis of computation. We said:

The customary hours for the full pay period for [the employee's] job were, as the district court determined, a forty-hour week. We reject the employer's claims on its cross-appeal [arguing that the district court erred by not including several weeks in which the petitioner worked less than forty hours].

*Thilges,* 528 N.W.2d at 619.

The district court properly determined that only forty-hour-work weeks were to be included in calculating Weishaar's average earnings. Because the two weeks at issue here were not customary, the trial court properly excluded them.

### IV. *Partial Preclusion of Tenth Claim.*

Weishaar's tenth claim, which was for cumulative injuries from 1982 until she was laid off on December 29, 1988, survived Snap–On's res judicata argument. As to the tenth claim, the commissioner ruled that Weishaar had suffered no industrial disability

after the March 21, 1989 hearing, and the district court affirmed. Weishaar claims in her cross-appeal that no substantial evidence supports the commissioner's conclusion that "[t]he evidence in the record of this case is substantially the same as the evidence that existed at the time of the prior hearing." Weishaar acknowledges that her physical condition is substantially the same as it was at the time of the prior hearing, but that does not foreclose the possibility of increased industrial disability, as to which her physical condition is only one factor. Weishaar points to events after the first hearing that would support her claim that her industrial disability has increased, but it is not clear whether the commissioner considered this evidence. In fact, the ruling appears to have considered only the claimant's functional disability, which is only part of the picture. The ruling said:

A review of the record in this case shows that little, if anything, is different now than it was at the time of the prior hearing. There is no evidence from any physician which indicates that the claimant's physical condition has worsened or changed. A functional capacity evaluation conducted on July 5, 1989 shows no substantial difference in activity restrictions from those which existed at the time of the previous hearing.... Claimant was laid off due to her restrictions at the time of the prior hearing and was again laid off due to those restrictions at the time of the recent hearing. The evidence in the record of this case is substantially the same as the evidence that existed at the time of the prior hearing. Accordingly, the claimant has failed to carry her burden of proof to show that any disability was proximately caused by injurious exposures occurring since December 29, 1988.

Weishaar contends that the commissioner should have considered other factors that changed the picture between the two hearings. Weishaar points out that, at the time of the March 21, 1989 hearing, she had been laid off but not terminated and that in fact she returned to work at Snap–On on July 17, 1989. She was, however, laid off on January 18, 1991, and not recalled within two years

and therefore lost her collective bargaining rights. At the time of the first hearing, she was being trained to become an alcohol counselor, but by her final termination on January 18, 1993, she had discovered that any such job would be at a seventy-five percent reduction in earnings and that she faced a prospect of severely decreased earnings. The commissioner's ruling does not discuss this evidence.

We cannot say that the limited evidence discussed in the commissioner's ruling supports the conclusion that Weishaar had not suffered additional industrial disability following the first hearing. We remand for a determination by the commissioner, based on the evidence already in the record, including the evidence just discussed, to determine the merits of Weishaar's industrial disability claim under her tenth petition.

### V. *Computation of Earnings.*

Weishaar's cross-appeal also asserts error by the commissioner and the district court in computing her earnings for the weeks ending August 11, 1990, and December 22, 1990, by excluding all hours worked over forty. In each of these weeks, Weishaar worked forty-eight hours at a straight rate of $11.29 and $11.31, respectively.

Weishaar contends that the commissioner and the district court erroneously concluded that all overtime *hours* are to be excluded in determining earnings, but in fact, it is only "amounts due in excess of the straight time rate for overtime hours worked" that must be deducted. Weishaar relies on this administrative rule to support her argument:

> The word "overtime" as used in Iowa Code section 85.61 means *amounts due in excess of the straight time rate* for overtime hours worked. Such excess amounts shall not be considered in determining gross weekly wages within Iowa Code section 85.36. Overtime hours at the straight time rate are included in determining gross weekly earnings.

Iowa Admin. Code r. 873–8.2(85) (1997) (emphasis added) (replacing rule 343–8.2). This rule appears to support Weishaar's argument, and Snap–On does not argue otherwise. In fact, Snap–On did not address this issue in its reply brief, and the argument could be deemed waived. Iowa R.App. P. 14(a)(3).

We reverse on this cross-appeal issue also. On remand the commissioner shall determine Weishaar's earnings for the weeks in question in accordance with rule 873–8.2(85).

**AFFIRMED ON APPEAL; REVERSED ON CROSS–APPEAL; AND REMANDED WITH DIRECTIONS.**