**GRIFFIN PIPE PRODUCTS CO., Appellee,**

v.

**Sam GUARINO, Appellant.**

No. 02–0655.

Supreme Court of Iowa.

June 11, 2003.

Jacob J. Peters of Peters Law Firm, P.C., Council Bluffs, for appellant.

John M. Burns of Burns Law Firm, Omaha, Nebraska, for appellee.

TERNUS, Justice.

What impact does a semi-annual plant shutdown have on an injured employee's rate of compensation for purposes of workers' compensation benefits? In calculating the applicable rate in this case, the chief deputy workers' compensation commissioner disregarded a two-week plant closure that occurred during the thirteen-week base period and substituted two weeks during which the employee worked. The district court and court of appeals disagreed with this approach.

Upon reviewing the governing statutes and considering the pertinent rules of statutory interpretation, we hold the agency correctly excluded from the base period

the time during which the plant was closed. Therefore, we vacate the court of appeals' contrary decision, reverse the judgment of the district court, and remand the case to the district court for entry of an order affirming the agency's ruling.

### I. *Background Facts and Proceedings.*

The facts relevant to the issue raised in this appeal are undisputed. In January 1999, the appellant, Sam Guarino, was injured in a workplace accident while employed by the appellee, Griffin Pipe Products Company, a self-insured employer. In the workers' compensation case that followed, the parties disagreed on the compensation rate to be used in computing the employee's weekly disability benefits. This dispute centered on whether two weeks during which the plant was closed should be included in the thirteen-week wage base used to determine the rate of compensation. *See* Iowa Code § 85.36(6) (1999) (providing that compensation rate for hourly employees is computed on the basis of the employee's earnings in the thirteen weeks immediately preceding the injury).

The evidence introduced at the contested case hearing showed that every year the plant is shut down for two weeks during the summer and two weeks in late December for cleaning and maintenance. Production workers such as Guarino earn no wages during these periods, although maintenance workers and certain management employees continue to work. The annual December closure fell within the thirteen-week period preceding Guarino's injury. When the plant was not shut down, Guarino was regularly scheduled to work a forty-hour week.

In calculating Guarino's rate of compensation, the deputy commissioner excluded the shutdown weeks and substituted the two weeks immediately preceding the thir-teen-week, pre-injury period. An award of weekly benefits was made based on the resulting rate. The chief deputy workers' compensation commissioner affirmed the deputy's decision in an intra-agency appeal.

On judicial review, the district court reversed the agency's determination of the compensation rate and remanded the matter for recalculation of the rate using a thirteen-week period that included the two weeks of no earnings. Upon appeal, the court of appeals included only one no-earnings week, concluding the inclusion of only one week more fairly represented the earnings of a plant employee. The court reasoned that because "Guarino experiences a total of four weeks of unpaid time off each year [due to] regularly scheduled plant shutdowns," he had "an average of one week of unpaid time off for every thirteen-week period." *Guarino v. Griffin Pipe Prods. Co.,* No. 02–0655, at 6, 2002 WL 31885878 (Iowa Ct.App. Dec. 30, 2002). This court granted further review.

### II. *Scope of Review.*

Our review of an agency decision is for correction of errors of law and is controlled by Iowa's Administrative Procedure Act, Iowa Code chapter 17A. *Stone Container Corp. v. Castle,* 657 N.W.2d 485, 488 (Iowa 2003); Iowa Code § 86.26. Reversal is appropriate when the agency has applied an erroneous interpretation of the law. Iowa Code § 17A.19(8)(*e* ).

### III. *Discussion.*

■ Because the resolution of the dispute before us turns on an interpretation of the workers' compensation act, we begin our discussion with a review of the most pertinent rules of statutory interpretation. When we interpret a statute, we attempt to give effect to ̇the general assembly's intent in enacting the law. *IBP, Inc. v.*

*Harker,* 633 N.W.2d 322, 325 (Iowa 2001). Generally, this intent is gleaned from the language of the statute. *State v. Casey's Gen. Stores, Inc.,* 587 N.W.2d 599, 601 (Iowa 1998). To ascertain the meaning of the statutory language, we consider the context of the provision at issue and strive to interpret it in a manner consistent with the statute as an integrated whole. *McSpadden v. Big Ben Coal Co.,* 288 N.W.2d 181, 188 (Iowa 1980). With respect to the workers' compensation statute in particular, we keep in mind that the primary purpose of chapter 85 is to benefit the worker and so we interpret this law liberally in favor of the employee. *Stone Container Corp.,* 657 N.W.2d at 489; *Harker,* 633 N.W.2d at 325.

With these principles to guide our analysis, we turn to the relevant statutory provisions. The basis for an injured employee's compensation under the workers' compensation act is "the weekly earnings of the injured employee at the time of the injury." Iowa Code § 85.36. Section 85.36 defines "weekly earnings" as

> [the] gross salary, wages, or earnings of an employee to which such an employee would have been entitled *had the employee worked the customary hours* for the full pay period in which the employee was injured, as *regularly required* by the employee's employer for the work or employment for which the employee was employed. . . .

*Id.* (emphasis added). For employees such as Guarino, who are paid on an hourly basis, "weekly earnings" are computed "by dividing by thirteen the earnings, not including overtime or premium pay, of said employee earned in the employ of the employer in the last completed period of thirteen consecutive calendar weeks immediately preceding the injury." *Id.* § 85.36(6).

The question that arose in this case is how this computation is affected when one or more of the weeks in the thirteen-week period do not reflect the "customary hours . . . regularly required by the employee's employer." *Id.* § 85.36. Guarino, focusing on the "customary hours" aspect of the statute, points out that in forty-eight of the fifty-two weeks in a year he is expected to work at least a forty-hour week. Therefore, he contends, the two-week lay off during which he worked no hours does not reflect his customary weekly earnings. The employer takes a different view of the statute, focusing on the "regularly required" language of section 85.36. It argues the plant shutdown was "regularly required" and therefore inclusion of the two weeks during which Guarino had no earnings is consistent with the legislature's intended method for computing an employee's compensation rate. Both parties claim our decisions in *Thilges v. Snap–On Tools Corp.,* 528 N.W.2d 614 (Iowa 1995), and *Weishaar v. Snap–On Tools Corp.,* 582 N.W.2d 177 (Iowa 1998), support their respective positions.

In the *Thilges* appeal, the employer challenged the district court's reversal of the commissioner's decision to include, in computing the employee's average weekly earnings, several weeks in which the employee worked less than forty hours. 528 N.W.2d at 619. Applying the same statutory language at issue here, we rejected this challenge, stating,

> Although [the employee] in fact worked less than forty hours during seven of the thirteen weeks immediately prior to the injury date of July 8, 1987, it also appears that this was the result of unanticipated occurrences that caused her to miss work on certain days. The customary hours for the full pay period for her

job were, as the district court determined, a forty-hour week.

*Id.*

The compensation rate was also a disputed issue in our *Weishaar* case. There, the district court concluded the commissioner had erred in including two weeks in the computation of average earnings in which the employee worked twenty-four hours and nineteen hours, respectively. *Weishaar,* 582 N.W.2d at 181. The evidence showed that the employee was always scheduled to work forty hours per week unless she was under medical restrictions. *Id.* at 182. We interpreted *Thilges* to stand for the proposition that "if a forty-hour week is customary for the particular employee, that must be the basis of computation." *Id.* Accordingly, we held "[t]he district court properly determined that only forty-hour-work weeks were to be included in calculating [the employee's] average earnings." *Id.*

The employer argues that the critical fact in these cases was the "unanticipated" nature of the occurrences resulting in the employees working less than their normal forty-hour workweek. *See Thilges,* 528 N.W.2d at 619 (stating lower-earnings weeks were "the result of unanticipated occurrences"). The district court seized on this fact, interpreting *Thilges* and *Weishaar* to support a rule that " 'customary' weeks do not include weeks where an employee does not work due to *unanticipated* occurrences." (Emphasis added.) Because the plant shutdowns at issue here were routine or anticipated, the district court concluded the two no-earnings weeks occurring prior to Guarino's injury were customary and therefore properly included in computing his wage rate.

We think the district court's application of section 85.36 is incorrect. First of all, we note that the focus of the statute is on the "customary hours" the employee is "regularly required" to work. *Why* a particular week may not reflect the employee's customary hours is important only insofar as it might be relevant to whether the *hours* worked in that week are in fact customary. Thus, the unanticipated nature of the occurrences that caused the employees in *Thilges* and *Weishaar* to work less than the number of hours they were normally required to work simply supported the conclusion that these weeks did not reflect the employees' *customary hours.* It would be a mischaracterization of our prior cases to state that *only* unanticipated reductions in hours can cause a workweek to be excluded from the averaging period.

▬ We agree with the agency that the issue under section 85.36 "is whether the *hours of work* in any particular workweek are representative of *the hours typically or customarily worked by an employee during a typical or customary full week of work.*" (Emphasis added.) This interpretation is most consistent with the language of the statute, which directs that the basis for computation of the weekly rate is to be the earnings that the "employee would have been entitled to had the employee *worked* the *customary hours* for the full pay period in which the employee was injured." Iowa Code § 85.36 (emphasis added); *accord* James R. Lawyer & Judith A. Higgs, *Iowa Workers' Compensation Law and Practice* § 12–4, at 123 (3d ed.1999) (stating weeks that contain "absences due to illness, vacation or other causes ... are not representative of [the worker's] earnings" and are routinely excluded from the rate calculation).

Our interpretation of section 85.36 is also supported by the legislature's amendment of this statute subsequent to our decisions in *Thilges* and *Weishaar.* In 2000, the general assembly added the following language to section 85.36(6):

If the employee was absent from employment for reasons personal to the employee during part of the thirteen calendar weeks preceding the injury, the employee's weekly earnings shall be the amount the employee would have earned had the employee worked when work was available to other employees of the employer in a similar occupation. *A week which does not fairly reflect the employee's customary earnings shall be replaced by the closest previous week with earnings that fairly represent the employee's customary earnings.*

2000 Iowa Acts ch. 1007, § 2 (codified at Iowa Code § 85.36(6) (2001)) (emphasis added). We think this amendment clarified the legislature's intent that a nonrepresentative week be excluded from the calculation of an employee's compensation rate.

■ While it is true that "any material change in the language of a statute is presumed to alter the law," *State v. Ahitow,* 544 N.W.2d 270, 273 (Iowa 1996), "[t]his presumption is not conclusive," *State v. Guzman–Juarez,* 591 N.W.2d 1, 3 (Iowa 1999). We pointed out in *Guzman–Juarez* that the adoption of an amendment following controversies about the construction of a statute may indicate the legislature was merely clarifying its intent by amending the law. 591 N.W.2d at 3. That is the situation we found in that case. There the amendment was adopted after a great deal of dispute within the legal community concerning the correct application of the original statute. *Id.* at 4. We concluded that under these circumstances, "the amendment was enacted to clarify rather than to change the existing law." *Id.*

We think the same conclusion can be reached here. Although our court, in the *Thilges* case, interpreted section 85.36 to permit the substitution of a typical work-week for a nonrepresentative week falling within the thirteen-week base period, confusion about the proper application of this rule continued, as illustrated by the *Weishaar* case four years later. The amendment quoted above, adopted less than two years after our *Weishaar* decision, addressed this very controversy and confirmed this court's interpretation of section 85.36. Thus, the 2000 amendment to section 85.36, like the amendment in *Guzman–Juarez,* clarified rather than changed the existing law. Accordingly, to determine what weeks should be included in the compensation rate calculation one must ask whether the *earnings* attributable to a particular week are customary, not whether a particular absence from work is anticipated. If an employee's earnings in a particular week "do not fairly reflect the employee's customary earnings," the commissioner must disregard that week in computing the applicable compensation rate. 2000 Iowa Acts ch. 1007, § 2 (codified at Iowa Code § 85.36(6) (2001)).

■ Turning to the case at hand, we think the agency properly concluded the two weeks during which Guarino had no earnings did not reflect the customary hours he typically worked, despite the fact that the reason he did not work his normal hours—the plant shutdown—was expected. Therefore, the agency did not err in excluding these weeks from its calculation of Guarino's rate of compensation.

IV. *Summary and Disposition.*

We find no error in the agency's interpretation and application of the law in computing the compensation rate for Guarino's disability benefits. We vacate the court of appeals decision reaching a contrary conclusion. Our decision also requires reversal of the district court's judgment reversing the chief deputy commis-

sioner's ruling on this issue. We remand this case to the district court for entry of an order affirming the agency's decision.

**COURT OF APPEALS DECISION VACATED, JUDGMENT OF DISTRICT COURT REVERSED, AND CASE REMANDED WITH DIRECTIONS.**