MERCY MEDICAL CENTER,
Petitioner–Appellee,

v.

Shelley HEALY, Respondent–Appellant.

No. 10–1912.

Court of Appeals of Iowa.

June 29, 2011.

Mark J. Sullivan of Reynolds & Kenline, L.L.P., Dubuque, for appellant.

Lee P. Hook and Joseph M. Barron of Peddicord, Wharton, Spencer, Hook, Barron & Wegman, L.L.P., West Des Moines, for appellee.

Considered by EISENHAUER, P.J., and POTTERFIELD and TABOR, JJ.

POTTERFIELD, J.

This is an appeal of the district court's November 3, 2010 ruling on judicial review reversing the workers' compensation commissioner's calculation of weekly benefits. We agree with the workers' compensation commissioner's interpretation of Iowa Code section 85.56(6) (2009),[1] and find his decision that the employee's customary weekly earnings were to be based on a

---

1. Although the compensable event in this case occurred in 2007, we will refer to the 2009 Code unless otherwise noted for ease of reference to the applicable language at issue. We note section 85.56(6) was amended in 2008, adding a phrase not applied to the calculation of benefits here. *See* 2008 Iowa Acts ch. 1079, § 1.

thirty-five-hour work week was not irrational, illogical, or wholly unjustifiable. We therefore reverse the decision of the district court and remand with directions.

## I. Background Facts and Proceedings.

On January 10, 2008, Shelley Healy, filed a claim for workers' compensation benefits as a result of a work-related cumulative back injury, which manifested on February 12, 2007. Her employer is Mercy Medical Center in Dubuque, Iowa. As a result of her work injury, Healy has undergone three back surgeries. She was released to return to work following the last surgery without any restrictions on October 21, 2008. However, she continues to experience pain when performing her work duties.[2] Effective January 22, 2007, Healy's hourly rate of pay was $11.62.

An arbitration hearing took place on February 24, 2009. Healy submitted a worksheet in which she asserted a weekly compensation rate of $265.48 per week based upon a thirty-five hour week; Mercy contended her weekly compensation rate was $217.82, which was based upon her hours actually worked and then-current rate of pay.

On May 5, 2009, an arbitration decision was filed. The deputy found Healy to have a sixty percent industrial disability.

With respect to the rate of compensation, the deputy found:

In this case, claimant was hired to work 35 hours per week for the position she was in on the date of injury. However, claimant seldom worked 35 hours per week. She would often use vacation time, personal sick leave time, etc. to supplement her worked hours to make 35 hours per week. This was sometimes

due to a low census at the hospital, other times for apparently personal reasons.

When a worker's pay records indicate a week in which the worker took unpaid time off for personal reasons such as vacation, illness, etc., it is appropriate to exclude those weeks as unrepresentative of the worker's normal earnings. However, here claimant was paid for her vacation and sick leave.

In addition, although normally a week with even paid vacation or sick time off might be unrepresentative, this claimant regularly and consistently used paid time off to supplement her hours actually worked to keep her paid hours at 35 hours per week. Thus, a work week with hours worked, some vacation time and some sick leave time, etc., was a normal, representative week for her. Excluding all non-worked hours, as defendants have done in their calculations, would skew her workers' compensation rate and would not accurately reflect her true normal earnings.

By the same token it is not inappropriate for the claimant to exclude two pay periods where she did not get paid for 35 hours per week. Where the record shows a worker's pay fluctuates, a less than a normal 40 hour, or in this case, 35 hour, work week might still be a representative week absent evidence the worker was guaranteed a certain number of hours per week or normally and consistently worked a certain number of hours per week. In this case, however, the record shows she *normally and consistently was paid for 35 hours per week,* and a pay period substantially lower than that is indeed unrepresentative of her normal earnings. The fact she used paid benefits to reach 35 hours per week instead of actually working all of

---

2. While Mercy contested the date and extent of Healy's injury in the proceedings before the commissioner and district court, those issues are not before us on appeal.

those hours does not change the fact her earnings were normally based on 35 paid hours per week.

(Emphasis added.)

The arbitration decision awarded Healy 300 weeks of permanent partial disability benefits at the rate of $265.48 per week from October 30, 2007, interrupted by healing period benefits (for August 30, 2007, through October 29, 2007; for January 3, 2008, through January 7, 2008; for February 21, 2008, through April 1, 2008; for July 31, 2008, through September 15, 2008; and for February 4, 2009, through February 6, 2009, also at the weekly rate of $265.48 per week). Temporary partial disability benefits were awarded for October 30, 2007, through November 12, 2007; and September 16, 2008, through October 1, 2008, at the same weekly rate of $265.48.

Mercy filed an intra-agency appeal, contending the deputy erred in awarding Healy sixty percent industrial disability and in calculating her rate of compensation. Healy cross-appealed, seeking a higher industrial disability rating. On March 25, 2010, the acting workers' compensation commissioner entered an appeal decision, affirming the industrial disability rating, but increasing the weekly compensation rate to $284.10. The commissioner stated:

Both sides present complicated, but reasonable methods to calculate rate using various techniques. However, if we are to approximate the earnings she would have been entitled to had she worked the full pay period in which the employee was injured, as regularly required by the defendant employer, the more rational approach is to simply multiply claimant's customary weekly hours to her hourly rate of $11.28 at the time of injury.[3] Even though claimant may have worked more or less than 40 hours

during some of the weeks before the injury due to unanticipated occurrences, her customary work week schedule should be used to calculate the rate of compensation. *Thilges v. Snap-On Tools Corp.*, 528 N.W.2d 614, 619 (Iowa 1995). This customary work schedule rule takes precedence over any averaging of earnings over the 13 weeks prior to the injury set forth in Iowa Codes section 85.36(6). *Weishaar v. Snap-On Tools Corp.*, 582 N.W.2d 177 (Iowa 1998).

Defendant–Employer has indicated that her regular hours are 35 per week. Consequently, her customary earnings or average weekly wage is $394.90. Given the stipulated marital status and entitlement to four exemptions, Claimant's weekly rate of compensation is $284.10 according to the Commissioner's published rate booklet for an injury in FY [fiscal year] 2006.

Mercy then sought judicial review, challenging both the rate calculation and the award of sixty percent industrial disability. On November 3, 2010, the district court affirmed the industrial disability rating. With respect to the rate calculation, the court ruled:

The court concludes the calculation of weekly earning for an hourly employee under section 85.36(6) must be based on the employee's actual wage history. It must be determined by averaging his or her actual earnings over the thirteen weeks immediately preceding the injury as specified in section 85.36(6). This section does allow a week that does not fairly reflect the employee's "customary earnings" to be replaced by the closest previous week that reflects such earnings. But such "customary earnings" still must be determined based on the

3. Healy's hourly rate of pay increased to $11.62 effective January 22, 2007.

employee's actual wage history, not merely what they were hired to work or some other assumed number of hours not supported by the record. The commissioner erred in not engaging in this thirteen-week-averaging of earnings as required by statute.

Second, the court believes the commissioner erred in including vacation paid time off, family medical leave paid time off, and sick paid time off in determining Healy's "customary" weekly hours and thus average weekly earnings....

... The record is clear and undisputed that in the thirteen weeks prior to Healy's February 12, 2007 work-related injury she never *actually worked* anywhere near a full seventy hours in any two-week period.... This was due to various reasons, including low patient census and personal issues. To make up for this lost income Healy took advantage of various paid time off benefits she had available to her through Mercy ... to supplement her "worked hours" to keep the hours for which she was *actually compensated* close to seventy in each of the relevant two-week periods. The average number of hours she *actually worked* in the thirteen weeks prior to her injury is closer to twenty-six than thirty-five.

The court agrees with Mercy and concludes Healy's average weekly wage is best determined by the regular hours she *actually worked* during the relevant thirteen-week period. The unavoidable fact is Healy did not regularly and customarily work seventy hours during each two week pay period. To allow her to use her "benefit hours" to artificially inflate her regular "worked hours," and thereby her "customary and average

weekly earnings," is not the intent behind section 85.36.

(Footnotes omitted.)

The court noted Healy "was fortunate to have sufficient paid benefits to take them consistently enough to thereby regularly keep the hours she 'was compensated for higher than the hours she actually worked." The court then stated "these benefit hours' were not earned' or accrued in the thirteen weeks preceding her injury." The district court concluded

the Commissioner committed legal error in his interpretation of 85.36 in concluding Healy's paid time off hours should be included in determining her average weekly earnings and rate of compensation, and then in using this assumption of a 35 hour regular work week to make such calculations without using the 13 week averaging of earnings required for hourly employees under Section 85.36(6). *Healy's weekly wage and rate of compensation should be determined based on the number of hours she actually worked in the 13 weeks preceding her February 12, 2007, injury.* Vacation, sick, and family leave paid time off should be excluded in these calculations. The Court remands the case to the agency to determine Healy's correct weekly earnings and rate of compensation under the proper application of Section 85.36 as set forth above.

(Emphasis added.) Healy now appeals the court's ruling on judicial review. Healy contends the commissioner's determination of weekly rate was not a mistake of law and was supported by substantial evidence.

## II. Scope and Standard of Review.

 Iowa Code section 17A.19 lists the instances when a court may, on judicial review, reverse, modify, or grant other appropriate relief from agency action. "In exercising its judicial review power, the

district court acts in an appellate capacity." *Mycogen Seeds v. Sands,* 686 N.W.2d 457, 463 (Iowa 2004). When we review the district court's decision, "we apply the standards of chapter 17A to determine whether the conclusions we reach are the same as those of the district court. If they are the same, we affirm; otherwise, we reverse." *Id.* at 464.

Factual questions in workers' compensation are "delegated by the legislature to the commissioner." *Larson Mfg. Co. v. Thorson,* 763 N.W.2d 842, 850 (Iowa 2009). Therefore, we do not apply a "scrutinizing analysis" to the commissioner's factual findings. *Midwest Ambulance Serv. v. Ruud,* 754 N.W.2d 860, 866 (Iowa 2008). Rather, "[f]actual findings of the commissioner are reversed only if they are not supported by substantial evidence." *Id.* at 864. The question "is not whether the evidence supports different [factual] findings than those made by the commissioner, but whether the evidence supports the findings actually made." *Larson Mfg.,* 763 N.W.2d at 850. "The burden on the party who was unsuccessful before the commissioner is not satisfied by a showing that the decision was debatable, or even that a preponderance of evidence supports a contrary view." *Midwest Ambulance Serv.,* 754 N.W.2d at 865.

"The application of the law to the facts is also an enterprise vested in the commissioner." *Larson Mfg.,* 763 N.W.2d at 850. "Accordingly, we reverse only if the commissioner's application was irrational, illogical, or wholly unjustifiable." *Id.* When the agency has not "clearly been vested" with authority to interpret a statute, we will review questions of statutory interpretation for errors at law. Iowa Code § 17A.19(10)(c); *Xenia Rural Water Dist. v. Vegors,* 786 N.W.2d 250, 252–53 (Iowa 2010).

The workers' compensation commissioner is generally charged by the legislature with the duty to "[a]dopt and enforce rules necessary to implement" workers' compensation laws. Iowa Code § 86.8. Our courts have previously found that the legislature did not delegate the interpretation of chapter 85 to the commissioner. *Mycogen Seeds,* 686 N.W.2d at 464; *see also Rojas v. Pine Ridge Farms, L.L.C.,* 779 N.W.2d 223, 231 (Iowa 2010) ("It is well-settled law that the legislature did not clearly vest the workers' compensation commissioner with the power to interpret the workers' compensation statutes."). And after examining chapter 85, we find the workers' compensation commissioner is not clearly vested with the authority to interpret Iowa Code section 85.36. *Cf. Xenia Rural Water Dist.,* 786 N.W.2d at 253 (noting there was not statutory language in Iowa Code sections 85.3(1) and 85.16(3) indicating a desire by the legislature to vest the commissioner with authority to interpret the subsections at issue). Therefore, we review the agency's statutory interpretation here for errors at law. Iowa Code § 17A.19(10)(c); *Xenia Rural Water Dist.,* 786 N.W.2d at 253; *see also Renda v. Iowa Civil Rights Comm'n,* 784 N.W.2d 8, 13–14 (Iowa 2010).

### III. Discussion.

Iowa Code section 85.36 "describes the basis for calculating a disabled employee's compensation rate." *Jacobson Transp. Co. v. Harris,* 778 N.W.2d 192, 197 (Iowa 2010). "The basis of compensation shall be the weekly earnings of the injured employee at the time of the injury." Iowa Code § 85.36. "Weekly earnings" are defined as "gross salary, wages, or earnings of an employee to which such employee would have been entitled had the employee worked the customary hours for the full pay period in which the employee was

injured, as regularly required" by the employer. *Id.*

The plain language of the statute contradicts the district court's ruling that "Healy's weekly wage and rate of compensation should be determined based on the *number of hours she actually worked* in the 13 weeks preceding her February 12, 2007, injury." (Emphasis added.) Section 85.36 does not define weekly earnings as the number of hours actually worked in the preceding thirteen weeks. Rather, weekly earnings are "earnings ... to which such employee would have been entitled had the employee worked the customary hours ... regularly required" by the employer. *Id.*

The focus of section 85.36 is on whether the employee's "earnings" are "customary." As the court in *Jacobson* explained,

"Customary" means "based on or established by custom"; "commonly practiced, used or observed"; or "usual." *Merriam Webster's Collegiate Dictionary* 285 (10th ed.2002). We have previously defined "customary" as "typical." Ascertainment of an employee's customary earnings does not turn on a determination of what earnings are guaranteed or fixed; rather, it asks simply what earnings are usual or typical for that employee.

778 N.W.2d at 199 (citation omitted).

Here, the commissioner opined

if we are to approximate the earnings [Healy] would have been entitled to had she worked the full pay period in which the employee was injured, as regularly required by the defendant employer, the more rational approach is to simply multiply claimant's customary weekly hours to her hourly rate ... at the time of injury.

The commissioner's interpretation is consistent with the language of section 85.36 and with the spirit of the workers' compensation chapter. *See id.* at 197 (noting the "fundamental purpose of the workers' compensation statute is to benefit the injured workers").

Mercy argues that the commissioner "simply assumed a regular 35 hour week." However, the employer's own records indicate Healy worked a thirty-five-hour week. A letter from Mercy's human resources director to Healy states, "Our records indicate that you regularly work 70 hours in a bi-weekly pay period for an average of 35 hours a week." The commissioner's finding that Healy customarily worked a thirty-five-hour week is supported by substantial evidence.

■ Our goal is to give effect to the intent of the legislature in its adoption of this provision. *Id.* To determine the intent of the legislature, we look to the words of the statute as well as the context of the language used. *Id.*; *Griffin Pipe Prods. Co. v. Guarino*, 663 N.W.2d 862, 865 (Iowa 2003). We interpret chapter 85 "liberally in favor of the employee." *Griffin Pipe Prods.*, 663 N.W.2d at 865.

Consistent with the remedial nature of workers' compensation laws, statutes for computation of wage bases are "meant to be applied, not mechanically nor technically, but flexibly, with a view always to achieving the ultimate objective of reflecting fairly the claimant's probable future earning loss."

*Jacobson*, 778 N.W.2d at 197 (quoting *Hanigan v. Hedstrom Concrete Prods., Inc.*, 524 N.W.2d 158, 160 (Iowa 1994)).

■ Section 85.36(6) provides:

In the case of an employee who is paid on a daily or hourly basis, or by the output of the employee, the weekly earnings shall be computed by dividing by

thirteen the earnings,[4] including shift differential pay but not including overtime or premium pay, of the employee earned in the employ of the employer in the last completed period of thirteen consecutive calendar weeks immediately preceding the injury. If the employee was absent from employment for reasons personal to the employee during part of the thirteen calendar weeks preceding the injury, the employee's weekly earnings shall be the amount the employee would have earned had the employee worked when work was available to other employees of the employer in a similar occupation. *A week which does not fairly reflect the employee's customary earnings shall be replaced by the closest previous week with earnings that fairly represent the employee's customary earnings.*

(Emphasis added.)

 The district court's determination that the weekly earnings means the hours actually worked in the thirteen previous weeks is contradicted by section 85.36(6). The calculation found in this paragraph is an averaging of the "earnings" of thirteen "customary" weeks. "Ascertainment of an employee's customary earnings does not turn on a determination of what earnings are guaranteed or fixed; rather, it asks simply what earnings are usual or typical for that employee." *Jacobson,* 778 N.W.2d at 199.

The remedial nature of section 85.36(6) is evidenced by the second and third sentences of the paragraph. In the second sentence the legislature has determined absences of a personal nature are not to diminish an employee's "customary earnings"; instead, the employee is to be reim-

bursed in "the amount the employee *would have earned had the employee worked when work was available to other employees of the employer in a similar occupation.*" Iowa Code § 85.36(6) (emphasis added). Similarly, in the third sentence, the commissioner is to disregard any "week which does not fairly reflect the employee's customary earnings." *Id.*

"[T]he determination of whether wages are customary under the circumstances is a matter expressly committed by section 85.36(6) to the discretion of the commissioner." *Jacobson,* 778 N.W.2d at 199. Consequently, we reverse only if the commissioner's application was irrational, illogical, or wholly unjustifiable. *Id.* at 196; *Thorson,* 763 N.W.2d at 850.

> In this case, the deputy found Healy normally and consistently was paid for 35 hours per week, and a pay period substantially lower than that is indeed unrepresentative of her normal earnings. The fact she used paid benefits to reach 35 hours per week instead of actually working all of those hours does not change the fact her earnings were normally based on 35 paid hours per week.

The commissioner explained further that

> if we are to approximate the earnings she would have been entitled to had she worked the full pay period in which the employee was injured, as regularly required by the defendant employer, the more rational approach is to simply multiply claimant's customary weekly hours to her hourly rate of $11.28 at the time of injury.

We do not find the commissioner's determination of Healy's weekly earnings to be irrational, illogical, or wholly unjustifiable,

---

4. The district court equates the statutory language "earnings" with "hours actually worked multiplied by an hourly wage, and excluding all paid time off." Had the legislature intended such a result, it could and would have said so. Moreover, the district court's interpretation renders the second sentence of section 85.36(6) meaningless.

and the district court erred in concluding otherwise. *See Jacobson*, 778 N.W.2d at 198 (agreeing with agency that issue under section 85.36 is whether the hours of work in any particular work week are representative of *"the hours typically or customarily worked by an employee during a typical or customary full week of work"*).

We agree with the commissioner (in affirming the deputy's ruling) that "[t]he fact [Healy] used paid benefits to reach 35 hours per week instead of actually working all of those hours *does not change the fact her earnings were normally based on 35 paid hours per week."* (Emphasis added.) This factual finding is supported by substantial evidence. As the district court noted, Healy "was fortunate to have sufficient paid benefits to take them consistently enough to thereby regularly keep the hours she was compensated for higher than the hours she actually worked."

We find no support in *Griffin Pipe* for Mercy's contention that vacation and sick leave *payments* are excluded from rate calculations. That case stands for the proposition that a *non-representative week* due to illness or vacation *is excluded* from the calculation. *See Griffin Pipe*, 663 N.W.2d at 867; *see also* Iowa Code § 85.61(3) (defining "gross earnings" as "recurring payments by employer to the employee for employment, before any authorized or lawfully required deduction or withholding of funds by the employer, excluding irregular bonuses, retroactive pay, overtime, penalty pay, reimbursement of expenses, expense allowances, and the employer's contribution for welfare benefits"). As stated in *Griffin Pipe*, "to determine

what weeks should be included in the compensation rate calculation one must ask whether the *earnings* attributable to a particular week are customary...." *Id.*

Healy now asserts that the commissioner should have used her rate of pay on February 12, 2007, which included a January 22, 2007 increase. This assertion was not presented to the commissioner or the district court, and we will not consider it on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). The rate of pay selected by the commissioner fairly represented the employee's customary earnings and we therefore affirm. *See* Iowa Code § 85.36(6) (replacing non-representative week's earnings with a week "with earnings that fairly represent the employee's customary earnings").

## IV. Conclusion.

Keeping "in mind that the primary purpose of chapter 85 is to benefit the worker" and "interpret[ing] this law liberally in favor of the employee," we conclude the commissioner did not err in its interpretation and application of section 85.36(6). *Griffin Pipe*, 663 N.W.2d at 865. We reverse the decision of the district court and remand for entry of judgment affirming the agency decision.

**REVERSED AND REMANDED.**